CASS COUNTY, PLAINTIFF IN ERROR, V. THE CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, DEFENDANT IN ERROR.

1.  Taxes: RAILROAD BRIDGE ACROSS MISSOURI RIVER. Section 39 of chapter 77 of the Compiled Statutes of this state, entitled "Revenue," requires the officers of the railroad corporations within the state, to return to the auditor of public accounts, for assessment and taxation, the number of miles of railroad in each organized county, and the total number of miles in the state, including road-bed, right of way, and superstructure

thereon, main and side tracks, depot buildings and depot grounds, section and tool houses, rolling stock, and personal property necessary for the construction, repairs, or successful operation of the railroad; but does not require a return of the bridges constructed across the Missouri river, said river being a navigable stream, the right to bridge which can be obtained only by a law of Congress, and not by the authority of the state, such bridge, when constructed, not being a part of the road-bed, nor superstructure thereon, under the meaning of the section alluded to.

2. ———: ———. The state board of equalization would have no jurisdiction or authority to include such bridge within the line of road-bed of the railroad for taxation, and could, therefore, levy no legal tax thereon.

3. ———: ———. Such bridge not being within the definition of "road-bed, right of way, and superstructure thereon," *It was Held*, That such part thereof as is within any county of this state would be liable to assessment and taxation by the local assessing and taxing officers of such county.

Error to the district court for Cass county. Tried below before Field, J.

*Allen Beeson* (*Covell & Polk* with him), for plaintiff in error, cited: Mills on Eminent Domain, Sec. 110. *Williams v. R. R. Co.*, 50 Wis., 76. *Houghton v. C., D. & M. R. Co.*, 47 Iowa, 370. *Ry. Co. v. Schurmeir*, 7 Wall., 272. *Barney v. Keokuk*, 94 U. S., 324. *Kittle v. Shervin*, 11 Neb., 65. *Deane v. Todd*, 22 Mo., 90. *State v. Powers*, 4 Zabr., 406. *Randle v. Williams*, 18 Ark., 380. *Louden v. East Saginaw*, 41 Mich., 18. *Jenkins v. Jenkins*, 63 Ind., 415. S. C., Am. Rep., 229. *Mathewson v. Thompson*, 12 R. I., 288.

*T. M. Marquett* and *J. W. Deweese*, for defendant in error, cited: *C., M. & St. P. Ry. Co. v. City of Sabula*, 13 Am. & Eng. R. R. Cases, 443. *Otoe County v. Mathews*, 18 Neb., 466. *B. & M. R. R. Co. v. Buffalo County*, 14 Neb., 51. *Union Pacific R. R. Co. v. Hall et al.*, 91 U. S. 343.

REESE, CH. J.

This action was instituted in the district court of Cass county, for the purpose of recovering from the county certain taxes which were alleged to have been illegally paid on the west half of the railroad bridge across the Missouri river at Plattsmouth.

It was alleged in the petition that the precinct assessor of Cass county assessed the property for the years 1881, 1882, 1883, 1884, and 1885, and upon his return of the same to the county officers the taxes were levied thereon, the same as upon other property in the county, and that the taxes were paid under protest in writing; that they were unlawfully levied and collected, for the reason that the bridge was, at all times, a part of the line of railroad of defendant in error, and legally taxable only as the other portions of the road were taxable, and that the same was for each year reported to the state board of equalization as a part of the railroad, and taxed accordingly, all of which taxes had been paid.

The answer of plaintiff in error consisted mainly in specific denials of the allegations of the petition, in so far as the illegality of the taxation was concerned, and it was alleged that the bridge was not legally taxable by the state board of equalization, that it was not a part of the road-bed of defendant in error's road; that it was not operated as a part of said road; that it was listed to the precinct assessor for taxation by the duly authorized officers of the railroad company, and that it was legally subject to taxation by the county.

A jury trial was had, when, upon the close of the testimony, the district court instructed the jury to find a verdict for defendant in error for the sum of $5,463.66, which was accordingly done, and upon which, after a motion for a new trial had been made and overruled, judg-

ment against the county was rendered. The county, as plaintiff in error, brings the cause to this court for review.

The petition in error contains twenty-five assignments of error. These assignments and the brief of the plaintiff in error are devoted, to a considerable extent, to the presentation of the question of the compliance by the agents of defendant in error with the requirements of the law in the payment of the taxes under protest, and the written notice thereof. · While we think that, in many instances, there was a failure to comply with the provisions of the law, in the respect named, yet we are disposed to examine but one question involved in the case, and that is, whether or not the tax was legally assessed and levied; this being, as we think, the controlling question in the case.

The law in this state for the assessment and taxation of railroad property is contained in sections 39 and 40 of chapter 77 of the Compiled Statutes, entitled "Revenue." These sections are as follows:

"Sec. 39. The president, secretary, superintendent, or other principal accounting officers within this state, of every railroad or telegraph company, whether incorporated by any law of this state or not, when any portion of the property of said railroad or telegraph company is situated in more than one county, shall list and return to the auditor of public accounts for assessment and taxation, verified by the oath or affirmation of the person so listing, all the following described property belonging to such corporation on the first day of April of the year in which the assessment is made within this state, viz.: The number of m les of such railroad or telegraph line in each organized county in this state, and the total number of miles in the state, including the road-bed, right of way, and superstructures thereon, main and side tracks, depot buildings, and depot grounds, section and tool houses, rolling stock, and personal property necessary for the construction, repairs, or successful operation of said railroad

or telegraph lines; *Provided, however*, That all machine and repair shops, general office buildings, store houses, and also all real and personal property, outside of said right of way and depot grounds as aforesaid, of and belonging to any such railroad or telegraph companies shall be listed for the purpose of taxation by the proper officers or agents of said companies, with the precinct assessors of any precinct in the county where said real or personal property may be situated, in the manner provided by law for listing and valuation of real and personal property."

"Sec. 40. The return to the auditor of public accounts herein provided shall be made on or before the 5th day of April annually. If the return aforesaid be not received by said auditor by the 10th day of April, he shall thereupon proceed to obtain the facts and information aforesaid in any manner that may appear most likely to secure the same correctly, and for that purpose may address a written communication to the corporation or to some officer of the corporation who has failed to make the return aforesaid. As soon as practicable after the auditor has received the said return, or procured the information required to be set forth in said return, a meeting of the state board of equalization, consisting of the governor, state treasurer, and auditor, shall be held at the office of said auditor, and the said board shall then value and assess the property of the said corporation at its actual value for each mile of said road or line, the value of each mile to be determined by dividing the sum of the whole valuation by the number of miles of such road or line. In making up such valuation or assessment the state board shall examine and consider the return herein required to be made, or the information procured by the auditor in default of such return, together with such other reliable information relative thereto as they may be able to procure; said board shall not assess the value of any machine or repair shop, or general office buildings, store

houses, or any real or personal property situated outside the right of way or depot grounds of such company. On or before the 15th day of May, or so soon thereafter as the said board, or any two thereof, shall have made or determined said valuation and assessment, the auditor shall certify to the county clerks of the several counties in which the property of the aforesaid corporation, or any part thereof, may be situated, the assessment per mile so made on the property of such corporation, specifying the number of miles and amount in each of such counties. All such property shall, for the purpose of taxation, be deemed personal property, and placed upon the tax list as hereinafter provided."

By these sections it appears that the officers of railroad corporations are required to certify or return to the auditor of public accounts the number of miles of their railroad in each organized county, and the total number of miles in the state, which is to include the road-bed, right of way, and superstructures thereon, main and side tracks, depot buildings and depot grounds, section and tool houses, rolling stock, and personal property necessary for the construction, repairs, or successful operation of the road.

The road-bed, as defined by Webster, is, "The bed or foundation on which the superstructure of a railroad rests."

The term, right of way, is defined in *Bodfish v. Bodfish*, 105 Mass., 319, as meaning, "The right to pass over another's land," etc.

In *Stuyvesant v. Woodworth*, 1 Zab. (N. J.), 136, it is said: "A right of way, in a legal sense of the term, is a right to pass, for all or for certain purposes, at all or certain times, over and upon another man's land or close."

Webster defines the word "superstructure," referring to railroad engineering, to be, "the sleepers, rails, and fastenings, in distinction from the road-bed—called also permanent-way."

23

Using these definitions instead of the language of the statute, it is the duty of the officers of railroad companies to make a report to the auditor showing the number of miles of their railroad line, including the bed or foundation on the land over which the company would have the right to pass, and the sleepers, rails, and fastenings thereon. This to include both the main and side tracks. It will be observed that from the reports made to the auditor the assessment must be made, and when such reports are filed with the auditor, it is the duty of the board to "then value and assess the property of said corporation at its actual value for each mile of said road or line," etc. The facts being given the state board as to the number of miles of the road-bed, right of way and superstructure, depot buildings, depot grounds, section and tool houses, rolling stock, and personal property necessary for the construction, reparation, and operation of the road, it then becomes the duty of the board to make the valuation; such valuation not being necessarily furnished by the officers of the corporation making the report. It is specifically declared in section 40, that the board, in making their assessment and valuation, shall "not assess the value of any machine or repair shop, or general office buildings, store houses, or any real or personal property situated outside of the right of way or depot grounds of such company." There is nothing, therefore, in the letter of the law which can be held to include the bridge in question. It is well known that the right to construct a bridge across a navigable stream, as the Missouri river is declared to be, can not be obtained by any grant or authority of the state, the right to grant a license being vested alone in the general government, by an act of congress.

It was claimed in the trial below, that the bridge and railroad of defendant in error were treated and considered by it as a continuous line of road. For that purpose witnesses were placed upon the stand, who testified that the

railroad was operated west from Pacific Junction, in Iowa, as one continuous line. But it was also shown by the same witnesses that much higher rates were charged for the transportation of passengers and freight across the bridge than over any portion of defendant's road; and that while in fact, so far as the running of trains and the transportation of passengers and freight was concerned, no change or transfer was made, yet an addititional burden was placed upon all for crossing the bridge. To that extent, at least, the road was not operated as a continuous line.

For the purpose of showing that the officers of defendant in error, as well as the officers of the state, had treated the bridge in question as a part of the road, certified copies of the list of property returned to the state auditor for the years 1881 to 1885, inclusive, were introduced and admitted in evidence, doubtless for the purpose of showing that the number of miles of road-bed reported to the state officers for those years included the whole of the line from the center of the bridge to the west line of Cass county. But there is nothing in these reports which tend, in any way, unless it be in the number of miles reported, to show that the bridge was included in the report. No mention is made of it, and no part of the trackage reported is noted as consisting of any portion of the bridge. These reports seem to be made in strict compliance with the letter of the law above quoted. It appears from the testimony that the bridge in question is a very costly structure, consisting of stone and steel or iron, and this great cost no doubt serves as a basis for the greatly increased charge for the transportation of persons and freight. We cannot believe, from the language used by the legislature, that it was ever its intention that such structures should be erected and conducted as this one is shown to be, and that they should be assessed and taxed as a part of the road-bed and superstructure thereof, without some additional report of

their value or cost being made to the state board of equalization. Nothing of the kind is required by law. Nothing of the kind is shown by the reports to the state auditor.

It would be manifestly unjust that such a bridge should be added into the railroad mileage, without some method being provided for taxing it according to its value, either separately or in the general mileage of the line. One witness for defendant in error testified that he did add an assessment of $40,000 value, so as to raise the value of the bridge over that of other portions of the track. But how or when this addition was made does not appear from reports made by him, and introduced in evidence. Further, the law provides for no such a report, and, we doubt not, none was made.

If the theory advanced by counsel for defendant in error, that the bridge in question constitutes a part of the road-bed, is true, it seems to the writer that the same portion of the road would be within the provisions of the law regulating the fare for passengers, which is fixed by section 1 of article 9 of chapter 72 of the Compiled Statutes at three cents per mile, and also under the jurisdiction of the board of railroad commissioners, and that not only would defendant in error be subject to the law and jurisdiction named, but that the charges testified to by the witnesses would be clearly in violation of the law, for we know of no exception of such bridges being made in either case. We apprehend that should such jurisdiction be assumed by the board of railroad commissioners, or should it be contended by the officers of the state or others that the charges named were being made in violation of law, it would be insisted that such authority was not given by the statutes.

We have been cited to the case of *Anderson v. C., B. & Q. Railroad Company*, decided by the supreme court of Illinois, and reported in volume 7 of the N. E. Rep., at

page 129. This case is in many respects similar to the one at bar, and it was there held that the county in which the eastern end of their bridge at Burlington, Iowa, was situated, could not impose taxes under local assessments, but that the bridge should be listed and assessed with, and as a part of the line of the road. There are some distinctions between the law of the state of Illinois and that of this state, providing for the assessment of railroad property, which we will notice.

By the act of 1872, under which that decision was rendered, it was made the duty of railroad corporations to report to the county clerk of each county into or through which their roads were constructed, in addition to the requirements of the law of this state, the value of improvements and stations located on their right of way. It is also provided that the right of way, including the superstructure of main, side, or second track and turnouts, and the stations and improvements of the railroad company on such right of way, shall be held to be real estate, for the purpose of taxation, and denominated "railroad track," and be so listed and valued; and shall be described in the assessment thereof as a strip of land extending on each side of the railroad track and embracing the same, with the stations and improvements thereon, "commencing at a point where such railroad track crosses the boundary line in entering the county, city, town, or village, and extending to the point where such track crosses the boundary line leaving such county," etc. It is also provided that, at the same time the statements are made to the county clerk, similar ones shall be made to the auditor of state, but containing in addition the number of ties in track per mile, the weight of track iron or steel per yard, what joints or chairs are used in track, the ballasting of road, whether gravel or dirt, the number and quality of buildings or *other structures* on "railroad track," the length of time iron in track has been used,

the length of time the road has been built, the amount of capital stock authorized and the number of shares into which it has been divided, the amount of capital stock paid up, its market value, or if no market value, then its actual value, the total amount of indebtedness (except for current operating expenses), and the total listed valuation of all its tangible property in the state.    These and other sources of information are furnished the auditor, and from which the state board assesses the "railroad track," and causes such assessment to be certified to the county clerk of the counties through which the railroads are constructed.    These and other provisions of that law render it certain that it was the purpose and intent of the legislature that all the "railroad track" within the boundaries of each of the counties should be assessed as real property, and that the assessing boards and officers should be furnished with full information as to the improvements and elements of value necessary to enable them to act with an enlightened judgment as to the value of the whole of the "railroad track," these words being in almost every instance when used in the act placed in quotation marks, as herein.    The purpose of the act, expressed as clearly as language would permit, being to tax the whole line of *track*, instead of "the road-bed, right of way, and superstructure *thereon*," as expressed by our law.    For the reasons here given, we do not think that the case cited can in any sense be held as decisive of this case.

We therefore hold that, under our statute, the tax was legally levied by the county officers, and that the district court erred in its instruction to the jury.    The judgment of that court is reversed, and the cause is remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.