COWEN et al. v. ALDRIDGE, Auditor of Belmont County, Ohio.

(Circuit Court of Appeals, Sixth Circuit. February 4, 1902.)

No. 996.

TAXATION—RAILROAD PROPERTY—OHIO STATUTES.

The statutes of Ohio relating to the taxation of railroad property (Rev. St. 1890, §§ 2770–2776) provide for the valuation of the property of a railroad company by a board consisting of the auditors of the several counties into or through which its road extends. If it extends into one county only, the auditor of such county constitutes the board. They also provide two general systems for distributing the valuation between localities for purposes of taxation. The real estate, structures, and stationary personal property are valued separately, and the valuation of each apportioned to its own local taxing district, while the valuation of the rolling stock, main track, roadbed, supplies, moneys, and credits is distributed between such districts in proportion to the mileage in each. A railroad of the state, extending through several counties, terminated at its southern end at low-water mark on the Ohio river. Such road was leased to a company owning a road on the opposite side of the river; the two being connected by a bridge and approaches owned, as shown by the pleadings, by the lessee. The approach on the Ohio side extended back from low-water mark 1,490 feet, and consisted of a permanent and expensive stone structure, having 43 arches. An additional rate was charged for passengers and freight crossing the bridge. The lessee, in making returns of the property of the lessor for taxation in Ohio, made no separate mention of such approach, but included the main track, roadbed, and right of way to low-water mark, and the same was assessed by the board of auditors, and the valuation duly apportioned

according to mileage. *Held*, that such valuation did not cover the approach as a "structure," but that the same was subject to valuation and taxation as such by the auditor of the county in which it was situated, as the property of the lessee.

Appeal from the Circuit Court of the United States for the Southern District of Ohio.

This case was a proceeding in the circuit court of the United States for the Southern district of Ohio in a foreclosure suit brought by the Mercantile Trust Company against the Baltimore & Ohio Railroad Company to foreclose a mortgage upon the property of that company. On March 11, 1899, the receivers filed an information in the foreclosure suit, setting forth: "That the Baltimore & Ohio Railroad Company is the owner of a bridge across the Ohio river, commencing at the town of Benwood, in the state of West Virginia, and running thence across said river to the town of Bellaire. That, commencing at the line between the said states of West Virginia and Ohio. the abutments of said bridge were constructed on lands owned by the Central Ohio Railroad Company, as reorganized; passing through said lands, and into and through one of the streets of the said city of Bellaire, in the center of which the abutments of said bridge were constructed; running for a distance of about one-half of one mile from the said line between the said states. That upon said abutments so constructed a railroad track was laid about the year 1872, and the said the Baltimore & Ohio Railroad Company, being then in possession of all the property of the Central Ohio Railroad Company, as lessee, continued to run locomotives and cars over said railroad track, from the line between the said states, westward, to the city of Columbus. That all of the property in the possession of the Baltimore & Ohio Railroad Company, as such lessee, as well as the property which it owned, has been assessed and placed upon the tax duplicate of Belmont county and other counties, in the name of the Baltimore & Ohio Railroad Company; it being bound, under the terms of the said lease from the said Central Ohio Railroad Company, as reorganized, to pay all taxes and assessments against said line of railroad. That such assessments have always been made by the board of auditors composed of the auditors of Belmont, Noble, Guernsey, Muskingum, Licking, and Franklin, who were duly organized as such board of assessors or appraisers in pursuance of the statute of the state of Ohio. That about the year 1890 the authorities of Bellaire claimed that the said abutments and railroad track, commencing at the said line between the said states, and running thence west about one-half of one mile, should be assessed as a structure separate and apart from the balance of the said railroad track between said cities of Bellaire and Columbus. That said subject, having been duly presented, was considered by said board of auditors and overruled; the said board holding and deciding that the said bridge structure, and the tracks thereon, should be assessed as a part of the said railroad between the said cities of Bellaire and Columbus; and it was so assessed in the year 1890, and each year since that year, up to and until the year 1898. That at the regular annual meeting of the board of auditors in the month of May, 1898, the said authorities of said city and the auditor of Belmont county, Ohio, again presented said question of the assessment of said structure separate and apart from the balance of said railroad track to the said board of auditors. That said board duly considered the same, and again overruled such application, holding and deciding that said structure should be assessed by said board as a part of the track of said railroad between said cities of Bellaire and Columbus; and it was so assessed, as it had been each and every year subsequent to the year 1890 and previous thereto. That, notwithstanding the facts aforesaid, Madison Aldridge, auditor of Belmont county, Ohio, has served notice upon the petitioners that he would appraise said structure, and put the same upon the duplicate of Belmont county, Ohio, to be assessed separately from the other property of said railroad, and that said auditor is now threatening to so appraise and place said structure upon the said tax duplicate, and, unless re-

strained by this honorable court from so doing, he will place the same upon the said tax duplicate, and proceed to collect from the petitioners the taxes on the same for the years 1894, 1895, 1896, 1897, 1898, which, exclusive of interest and costs, exceed the sum of two thousand dollars, notwithstanding the fact that the said bridge has been already appraised as hereinbefore stated, and the taxes thereon paid by the Baltimore & Ohio Railroad Company, up to the time of the appointment of these petitioners as receivers, and by them since that date, under and in pursuance of the assessment and appraisement of said property made by said counties through which said railroad runs." To this information the auditor of Belmont county filed an answer, admitting the ownership of the bridge, and his purpose to take proceedings to require the same to be taxed in Belmont county, in Ohio, and taking issue upon the allegations of the information claiming that said property had already been assessed and taxed under the laws of Ohio.

The case was heard upon the testimony and the report of the special master to whom the case had been referred. The master's findings were as follows:

"Statement.

"The bridge in question crosses the Ohio river between Bellaire, Belmont county, Ohio, and Benwood, Marshall county, West Virginia, connecting the lines of railway of the Central Ohio Railroad Company and the Baltimore & Ohio Railroad Company, and was built by said companies jointly, under a certain article of agreement made and entered into July 12, 1865, a copy of which article is hereto attached. Under said article of agreement the bridge was to be paid for by said companies in the proportion of two-thirds by the Baltimore & Ohio Railroad Company and one-third by the Central Ohio Railroad Company. The plans of the bridge, its location, and the contracts for its erection were to be as agreed upon by said companies, and included 'all the work of continuous arches and superstructures of wood and iron necessary to span the river, streets, railroads, and other roads extending from solid ground on the Ohio side of the Ohio river to solid ground on the Virginia [West Virginia] side of said river, together with the abutments and piers necessary to support the same.' Payment for the structure was provided by the issue of certificates signed by the presidents of the two said railroad companies; the same to be a lien on the bridge, but without any claim on either of said companies, or the stockholders thereof. To meet the liability of said certificates, a tariff of charges was established on all traffic passing over said bridge, not to exceed such sum as might be necessary to maintain said bridge, pay the annual interest on said certificates and the sum of $30,000 annually toward the creation and increase of a sinking fund for the ultimate redemption of said certificates. When all of said certificates were redeemed, then the charges were to be limited as to such sum as was necessary to maintain or renew the bridge, and to furnish an income to the owners of the bridge not exceeding 10 per centum per annum on the original cost thereof. After the redemption of all of said certificates the said bridge was to be held by the two said railroad companies, as tenants in common, in the proportion of two-thirds to the Baltimore & Ohio Railroad Company and one-third to the Central Ohio Railroad Company. Said bridge was constructed under said articles of agreement, and under the general authority of an act of congress approved July 12, 1865, which act provides (section 3) 'that it shall be lawful for any other railroad company or companies whose line or lines of road may now, or shall hereafter be built to the Ohio river, above the mouth of the Big Sandy river, in accordance with the terms of the charter, or charters, of such company or companies, to build a bridge across said river for the more perfect connection of any such roads, and for the passage of trains thereof, under the limitations and conditions hereafter provided.' Section 5 of said act provides 'that any bridge or bridges erected under the provisions of this act shall be lawful structures, and shall be recognized and known as post routes, upon which, also, no higher charge shall be made for the transmission over the same of the mails, troops and munitions of war of the United States than the rate per mile which the company or companies erecting such bridge may, from time to time, receive on the balance of their line or lines for such services.' Under an act of

congress approved July 11, 1870, a board of engineers was appointed by the secretary of war to inspect and report on the bridge over the Ohio river, and in the report of that board, dated April 19, 1871 (Senate Document, 42d Congress, Ex. Doc. No.'1, p. 70, on file in this case), it is found that the bridge, then unfinished, 'was being built according to law.'

"The structure is a single-track railway bridge, connecting the main stem of the Baltimore & Ohio Railroad with the Central Ohio at the eastern terminus of the latter, and is 4,001.5 feet in length; the length of approach on the Ohio side of the river being 1,490 feet, and on the West Virginia side 864 feet. The right of way for the approaches of the bridge is through the streets and alleys of Bellaire, and over the lands of Sullivan, Barnard, and Cowen. The council of Bellaire, through its duly appointed committee, and by ordinance dated March 7, 1867, authorized the Central Ohio Railroad Company to 'extend their railroad' through and over certain streets and alleys. December 12, 1867, J. H. Sullivan, Wm. G. Barnard and B. R. Cowen, joint owners of the 'Harris Farm,' so called, on a part of which Bellaire City was located, released to the Central Ohio Railroad Company the right of way for the road of said company through and over their lands for an approach for the track or tracks of the road of said company to the said bridge. Copies of said release and of the ordinance of Bellaire council are attached to the affidavit of T. J. Frazier, filed with the papers in this cause.

"It is in evidence, and is not disputed, that an additional fare of twenty-five cents is charged passengers coming west over the Baltimore & Ohio Railroad from Moundsville, West Virginia, to Bellaire, over said bridge, over the fare charged those from Moundsville to Benwood, at the east end of the bridge, and that one cent per hundred additional is charged for freight passing over the same part of the road. (See affidavits of Geo. M. Wise, W. H. H. Showacre, and S. C. Gans, filed herewith.)

"It is also in evidence, and not disputed, that the portion of said bridge lying in West Virginia is taxed in Marshall county, in said state, at $315,000. Upon the last fact above stated, counsel for the auditor cites Pittsburgh, C., C. & St. L. R. Co. v. Board of Public Works of West Virginia, 172 U. S. 32, 19 Sup. Ct. 90, 43 L. Ed. 354, as the ground upon which the present contention of the auditor is founded. In the cause cited the first point in the syllabus raises the question as to whether a writ of injunction from a United States court is the proper remedy. But that question has been settled in this case by his honor Judge Taft, who has decided that, under the Ohio Statutes, injunction is the proper remedy. The third point in the syllabus is: 'A railroad bridge is taxable under the Code of West Virginia of 1891 (chapter 29, § 67); and although the board of public works assesses separately the whole length of the railroad track within the state, and that part of the bridge within the state, yet, if the railroad company does not, as allowed by that section, apply to the auditor to correct any supposed mistake in the assessment, nor appeal. within thirty days after receiving notice of the decision of the board, to the circuit court of the county, and the officers of the state make no attempt to interfere with the company's possession and control of its real estate, nor, until after the expiration of the thirty days, either to impose a penalty for delay in paying the taxes, or to levy on personal property for nonpayment of them, the company cannot maintain a bill in equity in a court of the United States to restrain the assessment and collection of any part of the taxes.' That is to say, the railroad company, in the case cited, did not take proper steps to correct an alleged error of the board of public works, and by reason of its neglect it had no remedy, and was compelled to pay the assessment. In this case, however, the court says informant has taken the proper steps to prevent an assessment. Now, it is in evidence that that part of the bridge within the state of Ohio, and county of Belmont is upon the ground owned by the Central Ohio Railroad Company; that said company paid one-third of the cost of building the bridge, which is said to be the approximate cost of that part of the bridge structure lying within the county of Belmont. The certificate of the auditor of state of the state of Ohio, offered in evidence, shows that the Central Ohio Railroad Company, or its lessee, the Baltimore & Ohio Railroad Company, has for a number of years, up to and including the year 1898, paid

taxes on 137.3 miles of main-line track from Columbus, Ohio, to its eastern terminus at the Ohio river, in Bellaire, or 104.27 miles from Newark, Ohio, to said terminus, which is the whole of said main line of road between said points; and which includes that part which is upon and over the western approach to said bridge. (See affidavits of T. J. Frazier and Wm. P. De Hart.) All the railroad time-tables and guidebooks in current use give these distances.' It appears in evidence that, of the main-line track so assessed, 1.37 miles lies within the corporate limits of Bellaire. It is contended by counsel for the auditor that this 1.37 miles of main track in Bellaire is only that part of said track which reaches up to the point where the approach to the bridge begins, because, by the terms of the agreement between the two companies under which the bridge was built, it was to be built 'for the purpose of connecting their respective lines of road,' and that the track on the bridge is 'a connecting track between the two main lines on terra firma.' But the eastern terminus of the Central Ohio Railroad is, and has been ever since its first construction, at low-water mark on the west side of the Ohio river. Upon the completion of said bridge the main-line track formerly in use on the surface of the ground was abandoned, or put into use as a switch side track, and the main track was placed upon the Ohio approach to the bridge. The point of connection between the two roads, therefore, is at low-water mark on the Ohio side of the river, as it has always been. To make this connection, the Baltimore & Ohio Railroad Company laid a track from its main stem, at Benwood, West Virginia, over the bridge, to the terminus of the Central Ohio main-line track. It is the main-line track which lies on the western approach to the bridge, as well as that part of it which lies on the surface of the ground west of said approach, and within the corporate limits of Bellaire, which goes to make up the 1.37 miles referred to, and which is included in the total main-track mileage of 137.3 miles from Columbus to the Ohio river, on which taxes were assessed and paid as aforesaid.

"It is further contended that because no mention is made of the bridge, or any part thereof, nor of the land on which it stands, in the reports of the auditor or in the report of the auditor of state, it is not, therefore, included in the assessment. But there is no mention of the bridges of said company over the Muskingum river at Zanesville, over the Licking river at Newark, or of other bridges and trestles supporting the main-line track, which would seem to indicate that it was not customary to note such structure in making assessments on the main line of that road.

"Findings:

"In view of the facts stated above, I find that the main-line track of the Central Ohio Railroad extends from Columbus, Ohio, to low-water mark on the west bank of the Ohio river, within the corporate limits of Bellaire; that the length of said track is 137.3 miles, and that the Central Ohio Railroad Company, or its lessee, the Baltimore & Ohio Railroad Company, has paid in full the taxes levied on its said entire main track, which includes that part of said track lying upon and over the western approach to said bridge; and that said 137.3 miles includes the 1.37 miles of said main line track lying within the corporate limits of Bellaire.

"Testimony was offered going to show that a proposition had been made at the meeting of the board of county auditors to assess the Ohio approach to the Bellaire bridge as a structure separate and apart from the main-line track of the road, and that the proposition had been ignored, or at least not favorably considered, but the testimony on that point is contradictory. (See affidavits of T. J. Frazier, W. P. De Hart, A. M. Beatty, and A. B. Hall.) However the fact may be, the master has not considered it material to this inquiry, in view of his findings as above."

J. H. Collins, for appellants.

W. W. Granger, for appellee.

Before LURTON and DAY, Circuit Judges, and WANTY, District Judge.

DAY, Circuit Judge, after making the foregoing statement of facts, delivered the opinion of the court.

The right to an injunction in this case turns upon the determination of the issue as to whether the Baltimore & Ohio Railroad Company has been once taxed upon the bridge mentioned in the information under proceedings already had under the tax laws of Ohio. If the receivers have established the affirmative of this proposition, further attempts to tax the same property may be enjoined under the laws of Ohio, which provide the equitable remedy of injunction against illegal taxation. Rev. St. Ohio, § 5848. In Ohio the taxing of property of railroad companies is regulated by the Revised Statutes of the state (Rev. St. 1890, §§ 2770–2776, inclusive). Where a railroad is in several counties of the state, the auditors of such counties constitute a board of appraisers and assessors for such railroad company. For any railroad company having its road, or any part thereof, in one county only, the auditor of such county constitutes the board. At its annual meeting in May the board is required to proceed to ascertain all the personal property of the company, which, it is provided, shall include the roadbed, water and wood stations, and such other realty as is necessary to the daily running operations of the road, moneys and credits of the company, the undivided profits, reserve, or contingent fund, whether the same be in money, credits, or in any manner invested, and the actual value thereof in money; and also locomotives and cars not belonging to the company, but hired for its use or run under its control on its road by a sleeping car or other company, but as to such rolling stock the company may return it separately from its own property, in which event it shall be valued separately, but included in the aggregate valuation. Such boards have power to require certain officers of the road to make a detailed statement, under oath, of the items and particulars constituting such property, moneys, and credits, and the values thereof. The value of such property, moneys, and credits, as found and determined by the board, is required to be apportioned by the board among the several counties through which said road, or any part thereof, runs, so that to each county, city, village, township, and district, or any part thereof, therein, shall be apportioned such part thereof as shall equalize the relative value of the real estate, structures, and stationary personal property of such company therein, in proportion to the whole value of the real estate, structures, and stationary personal property of such company in the state; and the rolling stock, main track, roadbed, supplies, moneys, and credits of such company shall be apportioned in such proportion as the length of such road in such county bears to the entire length thereof in all said counties. When a railroad company has part of its road in the state, and part thereof in any other state or states, the proper board shall take the value of such property, moneys, and credits so found and determined as aforesaid, and divide it in the proportion the length of said road in the state bears to the whole of such road, and determine the principal sum for the value of such road in the state accordingly, equalizing the relative value thereof in the state, as above set forth.

114 F.—4

An analysis of these sections shows two general systems of distributing the taxable valuation of the property of railroad companies in Ohio. It is primarily made the duty of the board, whether it is to consist of one or more of the county auditors, to ascertain the property subject to taxation, and to place upon it a valuation. For the purpose of ascertaining the character and extent of the property, detailed statements may be required, under oath, from the officers of the company. The distribution of the valuation of the property, where several counties are interested, is made according to the nature of the property. Real estate, structures, and stationary personal property are to be apportioned to its own local taxing district. These valuations the statute requires to be "equalized," so that the local real estate, structures, and stationary personal property in any taxing district shall be valued in the same proportion as the value of said property in said taxing district bears to the total valuation in the state. The other class of property to be valued, which includes rolling stock, main track, roadbed, supplies, moneys, and credits, is not localized for taxation; but the aggregate value of this class of property is apportioned among the local taxing districts according to the mileage of the road in such districts, respectively. One object of this statute is evidently to require real estate and structures to be locally taxed. The valuation of the real estate and structures is apportioned to the locality where situated. This is the policy of the statute, and is in harmony with the general system of taxation in the state.

In view of this system of classification of railroad property for taxation in Ohio, to which class does the bridge in question belong? The part of the bridge which it is proposed to tax in Belmont county is the approach from the Ohio side, the length of which is 1,490 feet; on the West Virginia side, 864 feet. The approach on the Ohio side is described as consisting of 43 semicircular stone arches, with two spans of deck bridge. The piers are described as massive in structure. The bridge is an expensive and durable one. It was built under authority of an act of congress, and is made a post route of the United States, subject to regulation as such. Additional rates are charged to passengers and freight using the bridge. It has a distinct value as a bridge, irrespective of its present use for railroad purposes. It is a suggestive fact that the West Virginia portion has been valued for taxation in that state in the sum of $315,000. These considerations would seem decisive of the question as to whether this bridge is to be regarded as a structure to be locally taxed, or "roadbed" or "main track," with taxable valuation to be distributed throughout the length of the line in proportion to its mileage. It is, in our judgment, a structure, within the meaning of the statute, and to be taxed as other local structures are in the district where it is situated. Similar considerations led the supreme court of Nebraska to like conclusions in a well-considered case. Cass Co. v. Chicago, B. & Q. R. Co., 25 Neb. 348, 41 N. W. 246, 2 L. R. A. 188.

In the returns made by the Baltimore & Ohio Railroad Company for the Central Ohio Railroad, no mention is made of this structure. There is nothing in the testimony or in the finding of the master to show that it was distinctly considered in making a valuation of the

property to be taxed, notwithstanding its great value as an independent structure. But it is contended that this bridge has already been taxed as a part of the main track, including roadbed and right of way, by the board of county auditors. The findings of fact show that the Baltimore & Ohio Railroad Company is assessed and pays the taxes upon the property in Ohio of the Central Ohio Company, of which it is the lessee. This is because of the agreement between the companies, which requires this course of action. In Ohio all property is taxed against the owner. Rev. St. 1890, §§ 2734, 2735. In the return and assessments referred to, the Baltimore & Ohio Company assumes the obligation which the law imposes upon the Central Ohio Railroad Company. It is said that this bridge is included in the assessment of the 137.3 miles of main track, including roadbed and right of way; being the entire length of the line of the Ohio Central Railroad from low-water mark on the Ohio side of the river to its northern terminus at Columbus, Ohio. The finding shows that the southern terminus of the Central Ohio Railroad is at low-water mark on the Ohio side. It also appears that the tracks of the Central Ohio Railroad were raised and laid upon the approaches to this bridge. But it also appears from the allegations of the petition and the admissions of the answer that the bridge is the property of the Baltimore & Ohio Railroad Company. In the mortgage which is the subject of foreclosure in this case this bridge is described as owned and operated by that company, "known as the 'Benwood Bridge,' beginning in Marshall county, in the state of West Virginia, and running through the town of Benwood, over the Ohio river, into the town of Bellaire, in Belmont county, in the state of Ohio, together with the approaches thereof; the said bridge and approaches being of the total length of 8,556 feet, more or less." It is true that the master finds that this bridge was built under a contract between the Baltimore & Ohio Railroad Company and the Central Ohio Railroad Company, by which the latter company pays one-third of the cost of the bridge; and, after the payment of the certificates issued for such cost, the companies were to hold the same as tenants in common, in the proportion of two-thirds to the Baltimore & Ohio Railroad Company, and one-third to the Central Ohio Railroad Company. This contract cannot overcome the allegations of the pleadings as to the ownership of the bridge. Nor does the joint ownership of the structure relieve the situation from the considerations which give it a local character for the purposes of taxation. It is also found that the approach in question is upon ground of the Ohio Central Company, and that its tracks are laid upon it. This does not affect the question of the right to tax this large and costly structure against its true ownership, irrespective of the ownership of the track upon it, or of the right of way upon which it rests. When land is owned by one, and the buildings by another, the two may be separately assessed for taxation. People v. Board of Assessors of Brooklyn, 93 N. Y. 308. If this were not so, much property which must be assessed against the owner would escape taxation. It appears that the Baltimore & Ohio Railroad Company, the owner of this bridge and its approaches, is the owner, also, of a line of railroad extending across

the bridge from Ohio, and thence eastwardly, through West Virginia. We think this structure is a part of that railroad, and, within the requirements of the Ohio Statutes, taxable in Belmont county. We cannot agree that the assessment of the main track of the Ohio Central Railroad covered so much of this structure as includes the approach to this bridge from the Ohio side, or that, under the facts shown, it could be legally assessed as a part of such main track, including roadbed and right of way. It may be the practice to assess bridges as a part of such main track of railroads in Ohio. It may be that many bridges have no value except to carry the track of the company. Whether this practice, if it exists, be right or wrong, is immaterial here, in view of the character and ownership of the bridge in question.

We think the circuit court did not err in vacating the restraining order and dismissing the petition of the receivers. Judgment affirmed.