CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLEE, v. CITY OF NEBRASKA CITY ET AL., APPELLANTS.

| 53 | 453 |
|----|-----|
| f61 | 79 |
| 53 | 453 |
| 62 | 53 |

FILED JANUARY 19, 1898.　No. 8419.

1. **Municipal Corporations: ANNEXATION OF TERRITORY.** Ordinance No. 226 of Nebraska City was ineffectual of itself to annex adjacent territory to said city or to extend the territorial limits of the municipality.

2. ———: Taxation. A city cannot levy a tax on property where its situs is not within the corporate limits.

3. **Taxation:** Injunction. A court of equity will enjoin the collection of a tax which is absolutely void.

Appeal from the district court of Otoe county. Heard below before Chapman, J. *Affirmed.*

*C. W. Seymour,* for appellants.

*John C. Watson, J. W. Deweese,* and *F. E. Bishop, contra.*

Norval, J.

Action was instituted by the Chicago, Burlington & Quincy Railroad Company to enjoin the collection of a city tax assessed in 1893 by the authorities of Nebraska City upon the west half of plaintiff's bridge spanning the Missouri river at or near said city. From a decree awarding the company a peremptory injunction the defendants appeal.

The tax in question is claimed by the plaintiff to be invalid upon two grounds: First—The bridge in question is a part of plaintiff's line of railroad, and the portion of the structure lying within this state is not subject to taxation by the local assessing and taxing officers, but the state board of equalization alone has jurisdiction to assess the same. Second—No portion of said bridge is within the corporate limits of Nebraska City, and therefore the municipal authorities thereof had no power to tax the same for any purpose whatever.

The first contention is in the teeth of the decision of this court in *Cass County v. Chicago, B. & Q. R. Co.,* 25 Neb. 348, where it was distinctly ruled that the west half of the railroad bridge across the Missouri river at Plattsmouth was subject to taxation by the local assessor and not by the state board of equalization. That decision is vigorously assailed as being unsound, and standing alone as a precedent upon the question therein considered. An investigation of the subject anew is sought

herein. In the opinion of the writer, any discussion of that decision at this time, or of the first ground above stated for relief in this case, would be mere *obiter*, since the trial court found, and its finding is sustained by the proofs, as will hereafter appear, that no portion of the railroad bridge at Nebraska City is included within the geographical limits of such city. It will be soon enough to approve or overrule the decision alluded to when the question therein determined shall fairly arise in a pending cause.

The facts upon which the second ground for relief are predicated are substantially these: The territorial legislature of Nebraska in 1855 passed an act incorporating Nebraska City, the first section whereof provided "that all the territory within the geographical limits of Nebraska City, as designated upon the plat of said city, together with all the additions that may be hereafter made thereto according to law, is hereby declared to be a city by the name of Nebraska City." (Session Laws 1855, p. 391.) At the same session of the legislature there was enacted a law incorporating as Kearney City all the territory included in the boundaries of such city as designated upon the plat thereof. (Session Laws 1855, p. 417.) These two cities were consolidated by legislative enactment in 1857, and declared to be a corporation by the name and style of Nebraska City. (Session Laws 1857, p. 53.) The recorded plats of the two cities thus consolidated show a strip of land 160 feet wide lying between their eastern boundaries and the west bank of the Missouri river, which strip is designated on the plats as "Levee 160 feet wide." The west end of the railroad bridge is 120 feet east of the east boundary line of Nebraska City, as shown by the plats aforesaid, so that no portion of the bridge is within the limits of such city, unless the corporate boundaries were legally extended by ordinance No. 226 passed by the mayor and council on December 5, 1892, the first section of which follows:

"Section 1. That the following described land and territory be, and the same is hereby, included in the corporate limits of the city of Nebraska City, Otoe county, state of Nebraska, and the said limits are hereby extended so as to embrace and to include the same, to-wit: Commencing at the city limits on the quarter-section line running east and west through section ten (10), township eight (8), in range fourteen (14) east of the sixth principal meridian, in Otoe county, state of Nebraska, thence east to the middle of the channel of the Missouri river; thence down said channel until it intersects north and south line 350 west, and parallel to the north and south eighty-acre line in the southwest quarter of section ten (10); thence south to the city limits; thence in a northwesterly direction along the city limits to the place of beginning; also the surface of the ground and the accretion thereto lying between the corporation line of said city and the Missouri river within the above described line, being a part of section ten (10), in township eight (8), in range fourteen (14) east of the sixth principal meridian, in Otoe county, state of Nebraska, and containing less than five acres."

The adoption of said ordinance was wholly insufficient to change the boundaries of the municipality. The statute at that time in force designated the mode for the annexation of adjacent territory to a city of the first class having less than 25,000 inhabitants. (Compiled Statutes 1891, ch. 13a, art. 2, secs. 4, 6.) The one for which provision is made in said section 4 permits such annexation to be accomplished by the passage of an ordinance by the mayor and council extending the corporate limits so as to include territory contiguous or adjacent to the city, which by the authority or acquiescence of the owner has been subdivided into tracts or parcels containing not to exceed five acres. The record fails to establish that the real estate sought to be annexed by the ordinance in question had been subdivided by the owner into parcels of the size specified by said section 4. It is true the

amount of land attempted to be added to the city does not exceed five acres, but that is an unimportant consideration, and does not meet the legislative requirement that the contiguous territory must have been subdivided by the proprietor into parcels of not to exceed five acres, in order to entitle the same to be attached to the corporation by the mere passage of an ordinance ordering it to be annexed. It is a familiar doctrine that municipal corporations can exercise only such powers as are conferred by law, either expressed or implied. Where the statute points out the mode of procedure for the extension of the boundaries of a city, the same must be substantially followed, else it will be of no validity. It does not appear that the method provided in section 4 for the extending of the boundaries of a city of the class of Nebraska City has been pursued. The other statutory mode of annexation of adjacent real estate has not been observed, since it is not claimed that the land embraced within the description contained in the ordinance has been by the proprietor or owner thereof laid out into lots, blocks, avenues, and alleys or other grounds, nor has a plat thereof been made, acknowledged, and recorded as section 6 contemplates and requires. The ordinance was therefore in and of itself ineffectual to extend the limits of the municipality.

It is suggested that the boundaries of the city were enlarged so as to include the said strip of land 160 feet wide lying immediately east of the platted territory, by ten years' adverse usage by the city authorities. Doubtless, the mayor and council entertained a different view, else the ordinance to which reference has been made would most likely never have been adopted. They hardly would have attempted to annex territory which was already regarded as embraced within the boundaries of the city. Moreover, this record fails to show that the city limits were changed to include this adjacent territory by virtue of any adverse use or occupancy of the premises. No part of the bridge being within the geo-

graphical limits or boundaries of Nebraska City, the taxes levied and assessed thereon by the municipal authorities are unauthorized and void. (*Chicago, B. & Q. R. Co. v. Cass County*, 51 Neb. 369.)

In argument it is said that plaintiff has an adequate remedy at law, and that injunction will not lie to restrain the collection of the tax. It is true a court of equity will not interfere to prevent the enforcement of a tax merely because the assessment was irregular, but injunction may be resorted to where the whole tax is absolutely void and the enforcement thereof would be inequitable and against conscience. (*Touzalin v. Omaha*, 25 Neb. 817; *South Platte Land Co. v. Buffalo County*, 7 Neb. 253; *Bellvue Improvement Co. v. Bellvue*, 39 Neb. 876; *Chicago, B. & Q. R. Co. v. Nemaha County*, 50 Neb. 393; *Chicago, B. & Q. R. Co. v. Cass County*, 51 Neb. 369.) As the authorities of Nebraska City had no jurisdiction to impose the taxes in controversy plaintiff may invoke the aid of a court of equity to prevent the collection thereof. For the reason stated, the decree of the district court is right and it is

AFFIRMED.