**LEDWITH v. STORKAN et al.**

**No. 150 Civil.**

District Court, D. Nebraska,
Lincoln Division.

Nov. 27, 1942.

540

Herman Ginsburg, of Lincoln, Neb., for plaintiff.

Bruce Fullerton and T. R. P. Stocker, both of Lincoln, Neb., for defendants.

DELEHANT, District Judge.

Consideration is given to seperate motions by the defendants for vacation of a default judgment entered against them and for leave to defend against the plaintiff's complaint. See Rule 60(b) Federal Rules of Civil Procedure, 28 U.S.C.A. following Section 723c.

The material history of the case follows: On January 28, 1942, the defendant, Edward R. Storkan, filed in this court his voluntary petition in bankruptcy and was duly adjudicated a bankrupt. Seasonably thereafter, one Joseph Ginsburg was appointed as trustee of the bankrupt estate. On March 30, 1942, the trustee filed his complaint in this action against the defendants, who are wife and husband, alleging the fraudulent conveyance prior to the institution of the bankruptcy action by Edward R. Storkan to Gladys Storkan of certain property both real and personal, and praying for the cancellation and vacation of the conveyances, the award of the transferred property to the plaintiff and other equitable relief. Summons was issued on March 30, 1942, and, together with the complaint, was duly served on Gladys Storkan on April 4, 1942, and on Edward R. Storkan on April 6, 1942. The latest answer day available under the process for either defendant was, therefore, April 26, 1942. On June 5, 1942, Charles Ledwith, having succeeded Joseph Ginsburg in the office of trustee, was, by order of this court, substituted as plaintiff in his representative capacity. On August 10, 1942, approximately three and one-half months after answer day, the defendants being in default, the plaintiff filed herein his affidavit of default and affidavit showing that neither defendant was in the military service of the United States, within the contemplation of the Soldiers and Sailors Civil Relief Act of 1940, 50 U.S.C.A.Appendix § 501 et seq., and the defaults of the defendants were noted and judgment was entered in conformity with the prayer of the complaint. On September 10, 1942, upon the plaintiff's written praecipe therefor, a writ of assistance was issued which was served on the defendant, Gladys Storkan, on October 2, 1942, and under which a part of the personal property involved was delivered to the plaintiff. On October 17, 1942, the motions to set aside the judgment and certain affidavits in support thereof were filed.

Rule 60(b) provides in part: "On motion the court, upon such terms as are just, may relieve a party or his legal representative from a judgment, order, or proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect. The motion shall be made within a reasonable time, but in no case exceeding six months after such judgment, order, or proceeding was taken."

■ ■ The authority thus granted and limited is to be exercised within the sound discretion of the trial court. Orange Theatre Corporation v. Rayherstz Amusement Corporation, 3 Cir., 130 F.2d 185; Wallace v. United States, D.C., 2 F.R.D. 173. That discretion may not rightly be absolute or capricious. It must rather be so applied as to give effect, "not * * * to the will of the judge, but to that of the law." Tripp v. Cook, 26 Wend., N.Y., 143, 152. It must recognize at the same time, both that the objective of legal procedure is the determination of issues upon their merits instead of upon refinements of procedure, and also that litigants and their counsel may not properly be allowed with impunity to disregard the process of the court.

The effort of the defendants to vacate the judgment rests upon the alleged negligence of an attorney whom they had employed for their defense, who, it should be added, is not one of the gentlemen presently representing them. They sought originally to sustain their position solely by their own affidavits which in substance, acknowledge their reception of process and aver that they promptly employed the attorney in question who resides in Lincoln, Nebraska, left with him the summonses and copies of complaint served on them and informed him of the nature of their alleged defense; that they knew nothing of the case thereafter until the service of the writ of assistance and did not know of the entry of judgment until some time after the service of the writ of assistance; that after service of the writ of assistance they had difficulty in making personal contact with their former attorney, who, when finally overtaken by them, stated that "he did not understand what had happened and he did not know how to proceed in the premises"; that they then employed their present counsel. The dates of such employment are shown by affidavits of the two attorneys to be October 14, 1942, and October 15, 1942, respectively. On oral argument, leave was granted to the defendants to file by way of further showing an affidavit of their former attorney. That affidavit, now filed, shows his employment by the defendants, and asserts: "that by reason of being absent from the state of Nebraska after he had accepted employment in said cause, he, according to the record, had neglected to plead therein, although he was under the impression, after the commencement of said suit and prior to his leaving the state

542

of Nebraska, he had filed an answer therein; that because of other business and his absence out of the jurisdiction of the court, he had neglected so to do." He also states that he did not know of the entry of the default judgment and had no discussion of it with the defendants until after service of the writ of assistance.

Certain considerations impair the effect and persuasiveness of the defendants' showing. And foremost among them are its own inadequacies. The defendants, if their own statement is to be credited, made one gesture only in their own behalf. They consulted the attorney, and then proceeded to ignore their case for the period of six months, less a few days. Though Gladys Storkan is shown, and admitted, to have had contact with the attorney on more than one occasion during that interval in connection with other litigation in which she was involved, neither she nor the attorney even mentioned this case. Then, the attorney's explanation of his failure to answer is vague and unconvincing. He attributes it to "other business and his absence out of the jurisdiction of the court", but he does not particularize. He does not disclose the nature of the "other business" from which a court might consider whether it was of such urgency, continuity, and distraction as to make his neglect of the process of this court excusable. Nor is he more frank or candid respecting his absence from the state. He does not inform the court how frequently, when, upon what notice, under what sudden and diverting pressure, or otherwise under what circumstances he left Nebraska, how long he remained away from the jurisdiction, or anything else touching his absence. His affidavit is utterly unconvincing, except in its acknowledgment of his employment and his failure to answer.

■ Then, the plaintiff's countershowings disclose that during a part of the period of default, the defendants' attorney was actually in Lincoln and engaged in the normal pursuits of a law practice; that he had at least some contacts in the interval after the default and before the issuance of the writ of assistance with one or both of the defendants; and that following the service of that writ he negotiated with the plaintiff's counsel for the adjustment of the differences between the parties. These considerations are only indirectly and remotely pertinent for the critical period of time is the interval between the service of summons and the time for answer, or at the latest the

entry of the judgment. Beauford County Lumber Co. v. Cottingham, 173 N.C. 323, 92 S.E. 9.

It must be observed that the plaintiff was not unduly punctual in taking judgment. He allowed more than a reasonable time to elapse after answer day before he demanded the relief to which he appeared by the record to be entitled. Nor is there any suggestion of any intervening contact between him or his attorney and the defendants or their counsel, or any advice to him as to the identity of defendants' counsel in this case which might oblige him to forebearance even greater than he exercised. Neither is any want of familiarity with legal machinery, or general ineptitude on the part of the defendants involved. They are more than normally acute mentally and are not strangers to judicial proceedings.

The court considers the motion upon the assumption that the defendants might have had a valid defense at least in part to the plaintiff's complaint, although the theory of their available defense suggested in their showing is such that it probably could not be effective in any event against the plaintiff's claim in its entirety.

■■ The defendants rest their prayer for relief against the judgment chiefly upon the issue of excusable neglect on their part in consequence of their attorney's omission to file an answer in their behalf. It is manifest that the facts here do not involve either mistake or surprise. If relief may be granted at all it must rest either upon "inadvertence" or "excusable neglect". And the court is satisfied that the defendants have not made a showing entitling them to vacation on either ground.

■ In the literature touching the Federal Rules of Civil Procedure, Rule 60(b) is said to have its source in a comparable provision of the California Code. It may be remarked that identical or essentially similar provisions may be found in the codes of many other states where they have persisted for more than fifty years, in some instances. But since California is regarded as the point of the rule's origin, its attitude in the application of its similar code provision is at least instructive.

Accordingly, we find that in California it has been held that the pressure of other business, the distracting intervention of Sunday, and the confusion of a pleading among papers in an attorney's office are inadequate to show excusable neglect in the

seasonable filing of a statutory cost claim. Dow v. Ross, 90 Cal. 562, 27 P. 409. There, too, the preparation of an answer and the failure to file it under the mistaken impression that it was filed is not such inadvertence as will support relief from the consequences of failure to make the filing. Shearman v. Jorgensen, 106 Cal. 483, 39 P. 863, 864, in which, reversing on several grounds, a lower court's order vacating a default judgment, the supreme court said respecting inadvertence "if the inadvertence is wholly inexcusable, as if it arises from gross negligence, the court will not look upon it kindly, and will have none of it." In Slater v. Selover, 25 Cal.App. 525, 144 P. 298, it was held that the negligence of a defendant was not excusable who had requested his business partner to attend to his defense of a suit after which he forgot about the suit until after he had suffered a default judgment to be entered. Ross v. San Diego Glazed Cement Pipe Co., 50 Cal. App. 170, 194 P. 1059, holds that neither inadvertence nor excusable neglect within the statute is shown by the fact that an attorney employed by the party, on receiving a cross complaint, delivered it to his stenographer with instructions only to place it in the office files but took no further step respecting answer, whereupon his client was defaulted; and this too notwithstanding the circumstance that after answer day and on the day of entry of judgment the attorney died. In Berendsen v. Babdaty, 62 Cal. App. 185, 216 P. 385, the court asserted that "excusable neglect" was not shown by the fact that counsel was under an unusual pressure of work, and that his health was poor, though not bad enough wholly to preclude him from attending to any business. Finally, in Doyle v. Rice Ranch Oil Co., 28 Cal.App.2d 18, 81 P.2d 980, 981, it was considered that a showing that one of the attorneys for the defaulted party prepared an amended complaint during a period of illness of the stenographer of an associate attorney and mistakenly thought it had been transmitted by mail for filing, when in fact the stenographer's illness had prevented such mailing, was inadequate to disclose excusable neglect. Significantly, the court said: "The affidavit reveals neglect, but not excusable neglect. Carelessness and negligence is not akin to excusable neglect."

It is considered that this brief reference to a few of the many California cases which have been examined in this study will be sufficient to reflect the tenor of decisions in that state up to the time when the rule now considered was borrowed from the jurisprudence of California and to show that, whether inadvertence or neglect be relied upon for relief from default the offending act or omission must be excusable. Besides, the rule is not applied differently in other jurisdictions.

In Haas v. Scott, 115 Or. 580, 239 P. 202, reliance by an attorney on the statement of a deputy clerk that a decree was not on file though the record showed the contrary did not avail his client as a showing of surprise, mistake or excusable neglect authorizing the vacation of a judgment. See also Hicklin v. McClear, 19 Or. 508, 24 P. 992.

The supreme court of Idaho, in Boise Valley Traction Co. v. Boise City, 37 Idaho 20, 214 P. 1037, refused to relieve a defendant municipal corporation on the ground of mistake, inadvertence, surprise or excusable neglect from a default judgment resulting from the forgetfulness of the defendant's mayor who on receiving a summons, failed to answer by reason of confusion of papers in his office or mistake or inadvertence of a clerk on his staff in placing the summons where the mayor did not thereafter find it. In fact, the court reversed on the sole ground of the inadequacy of defendant's showing, an order of the trial court vacating the default.

Gutierrez v. Romero, 24 Ariz. 382, 210 P. 470, holds that an unintentional omission to file an answer because the process was misplaced and inadvertently overlooked is not mistake, inadvertence, surprise or excusable neglect within the meaning of an identical code provision. And these terms were thus construed as against a garnishee with the explicit statement by the court that a defaulting garnishee is entitled to much more liberal construction than a defaulting defendant.

More briefly, Indiana has denied relief, under a comparable statute where default resulted from the neglect of a township trustee, who had knowledge of the suit. Davis v. Steuben School Tp., 19 Ind.App. 694, 50 N.E. 1. And Georgia has held that failure to plead seasonably is inexcusable, though it be founded in reliance upon a void order of the trial court extending the time for pleading. Deering Harvester Co. v. Thompson, 116 Ga. 418, 42 S.E. 772. North Carolina has also denied relief where the defendant on being served, employed coun-

sel and thereafter failed to give further attention to the case in reliance upon a rumor that the plaintiff had abandoned the claim. Roberts v. Allman, 106 N.C. 391, 11 S.E. 424. In a later case, the same court denied the vacation of a default arising out of failure of a defendant personally for some six months to pay any attention to his own case after employing counsel who two months before the entry of default had entered military service. Jones-Onslow Land Co. v. Wooten, 177 N.C. 248, 98 S.E. 706, 707. Quoting with approval from Roberts v. Allman, supra, the court in the Wooten case said: "It is not enough that parties to a suit should engage counsel and leave it entirely in his charge. They should, in addition to this, give to it that amount of attention which a man of ordinary prudence usually gives to his important business."

■ Citations to like effect might be accumulated but the effect would serve no practical purpose. Save in those cases where the court has granted its indulgence without real study and as if the vacation of the judgment were virtually an arbitrarily demandable right of the delinquent party, there is no practical difference of opinion upon the point that neglect or inadvertence resulting in default will not alone justify the vacation of the ensuing judgment. The neglect or inadvertence must be excusable, and real and practical grounds for excuse must be factually shown in support of the motion.

■ It may be added that while inadvertence and neglect are not precisely identical in their connotations they are often classified as synonymous. See Websters New International Dictionary 1925 Edition. They are frequently employed interchangeably in applying the tests imported into Rule 60(b). And finally, though in the rule, and in the statutes underlying it, the word "excusable" does not precede the word "inadvertence", the pertinent decisions deny relief on the ground of inadvertence unless it is actually excusable.

■ Precisely what circumstances will avail to render the neglect of counsel excusable may not be adequately set down. But some measure of excusability may be gotten from decisions where relief has been granted. They include (a) continuous preoccupation with the trial of a distracting first degree murder case, (b) reliance on assurance by the court or a clerk thereof or opposing counsel as to the time of a trial, (c) failure to reach the place of trial in consequence of casualties in traffic, (d) sudden illness of counsel, (e) unanticipated summons to the bedside of a dying relative, and other like incidents. In each instance there was inadvertence or neglect which intercepted the timely performance of a required act, but there was likewise some disturbing and distracting event which rendered the error excusable.

■ Inevitably, the argument of the defendants must proceed to the point where they assert, that having employed counsel for the protection of their interests, they did all that could be expected of them and are entitled to absolution from responsibility for their attorney's negligence. But that seems not to be a tenable position, for by the weight of authority the negligence of counsel in this behalf is imputed to his client. An analysis of cases relevant to the issue is made in a note to Citizens' National Bank of Sisseton v. Branden, 19 N.D. 489, 126 N.W. 102, in the report of that case appearing in 27 L.R.A.,N.S., on page 858. See also 34 C.J. 307–313.

■ ■ Recognizing that the decisions of the Supreme Court of Nebraska upon a related, though not identical, issue are not controlling in a consideration of Rule 60(b), the court, nevertheless, regards them as instructive upon the relation between attorney and client in this state, and the consequence upon the client of actions or omissions of the attorney within the scope of his employment. And it may be remarked that here the fault or negligence of an attorney in respect of pleading in or presentation of a client's case is regarded as that of the client. Tootle-Weakley Millinery Co. v. Billingsley, 74 Neb. 531, 105 N.W. 85; Chicago, B. Q. R. Co. v. City of Nebraska City, 53 Neb. 453, 73 N.W. 952; Scott v. Wright, 50 Neb. 849, 70 N.W. 396; Ganzer v. Schiffbauer, 40 Neb. 633, 59 N.W. 98; Lyman v. Dunn, 125 Neb. 770, 252 N.W. 197.

■ So, it appears to the court that the showing in support of the motions will not sustain their allowance. The vacation of a default judgment duly entered without fraud or overreaching, is not an action which the court should take arbitrarily or as a courtesy or favor to the losing party. Unless and until he shows that his default and the resultant judgment are attributable to his "mistake, inadvertence, surprise or excusable neglect", the rule invoked confers no authority upon the

court to vacate the judgment and allow him to answer. In the absence of such a showing, the judgment must stand regardless of any inclination towards indulgence, to which the court may be prompted.

Even when he makes the showing required by the rule, his claim to relief is not absolute. He merely invokes then, and by that showing, the exercise by the court of a sound judicial discretion as to whether the vacation solicited should be allowed. It is true that, upon adequate showing, the court's discretion should ordinarily incline towards granting rather than denying relief, especially if it be manifest that no intervening rights have attached in reliance upon the judgment and no actual injustice will ensue. And the reported decisions under the rule reflect the pursuit of that practice.

But the admonition towards indulgence in the exercise of an allowable discretion must not betray the court into a meddling manifestation of assumed discretion in circumstances which, under the rules, do not bring discretion into operation. Much less should it be resorted to in support of an indefensibly sympathetic appraisal of an attempted showing of "inadvertence or excusable neglect". If the showing be inadequate fairly to establish such "inadvertence or excusable neglect", the simple, even if sometimes unpleasant, duty of the court is to find accordingly and deny the relief sought.

Convinced, therefore, of the inadequacy of the present showing, the court is entering an order denying and overruling the motions.