Pat GRIFFIN, d/b/a Pat Griffin Company and Wypag Inv. Co., a Corporation, Appellants, (Plaintiffs below),

v.

TOWN OF PINE BLUFFS, a Municipal Corporation, Appellee, (Defendant below).

No. 3022.

Supreme Court of Wyoming.

Nov. 28, 1961.

Ward A. White, George F. Guy, of Guy & Phelan, Cheyenne, for appellants.

Maxwell E. Osborn, of Ferrall, Bloomfield, Osborn & Lynch, Cheyenne, for appellee.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Justice HARNSBERGER delivered the opinion of the court.

Because of their identity of interest, the plaintiffs below and appellants here will be referred to as "Griffin" and the defendant below and appellee here will be named as the "Town."

Griffin sued the Town to recover amounts paid under protest by him on account of municipal gasoline taxes levied and assessed by the Town against Griffin; for an injunction restraining the Town from making further assessment or collection of municipal gasoline taxes from Griffin; and to have declared illegal the annexation of Griffin's land to the Town area. Griffin contended the property from which gasoline was sold was not within the corporate limits of the Town and consequently sales of gasoline therefrom were not subject to the Town's municipal gasoline tax. The Town contends Griffin's property was within the

Town. The court gave judgment for the Town and Griffin appeals, insisting the judgment does not conform to the pleadings; the court erred in its rulings upon plaintiffs' objections; and the judgment is not supported by the evidence. On the other hand, the appellee submits that the action is a collateral attack upon the incorporation of the Town and there is sufficient evidence to support the court's judgment.

Among other matters recited therein, a pretrial order, approved by the parties, provided that certain plats, Plaintiffs' Exhibits A, B, and C, might be offered without "proof of making," but subject to relevancy, and that Griffin's property is located approximately as shown on the plat attached to Exhibit A and as shown on Exhibit C, but is not within the area shown on Exhibit B.

■■■■ We commence our consideration of this matter with the elementary premise that the burden of proof rested upon Griffin to establish every fact necessary to entitle the relief sought, and in so doing we consider all evidence most favorable to the Town, together with all reasonable inferences therefrom, and disregard all evidence in conflict therewith, to ascertain if that evidence supports the judgment.

■■■■ An examination of Exhibit A, which bears the notation "Copyright Dec. 1937 By M. E. Miller," shows the Griffin land is well beyond the Town's limits as indicated thereon. The only portion of the Town shown to be in section 14 on the exhibit lies within the west half of the northwest quarter of that section, while Griffin's land lies in the extreme northeast portion of the northwest quarter of section 14.

Examination of Exhibit E, another plat received in evidence, shows the disputed Griffin land consists of one acre within the extreme northeast corner of the northwest quarter of section 14, the same as it is shown on Exhibit A.

The following appear upon Exhibit B:

"Engineer's Certificate

"State of Wyoming }
"County of Laramie } ss

"I, T. H Baldwin, of Cheyenne, Wyoming hereby certify that this map was made from the records of the office of the County Clerk of Laramie County, Wyoming and covers the area described as follows: Beginning at the point of intersection of the South R. of W Line of the U.P.R.R and the east line of Section 15, T. 14 N., R. 60 W., 6th P.M.; thence SW along said R. of W. approximately 3970 ft; thence South 1950 ft to the north line of S½ S½ said Sec. 15; thence West to the west line of said Sec. 15; thence South to the W¼ cor. Sec. 22 T. 14 N., R. 60 W.; thence east to the E¼ cor. said Sec. 22; thence North to the E¼ cor. said Sec. 15; thence East 840 ft; thence North 1531.7 ft.; thence West 760 ft; thence North 738 ft. to the said U.P.R.R. R. of W. Line; thence Westerly to point of beginning. All in Sections 14, 15 & 22, T. 14 N., R 60 W., 6th P.M. and containing 804.45 acres more or less

"/s/ T. H. Baldwin
"Engineer
"Registration No 19

"Approved as in accordance with resolution of the Town Council of the Town of Pine Bluffs, Wyoming, passed August 5, 1942 and recorded on page 441 of the minute book of said Council.

"Attest:

"/s/ Harold Johnson /s/ M. L. Morris
"Clerk                      Mayor

"Map Showing
Corporate Limits
of
Pine Bluffs.
Laramie County Wyoming
Scale 1″ = 400′   March 1943"

Exhibit B does not indicate the location of the Griffin land at all, but does show the

only portion of the Town lying in section 14 to be wholly within the west half of the northwest quarter of that section, the same as it is shown to be on Exhibit A.

The following appear upon Exhibit C:

"Engineer's Certificate

"State of Wyoming

"County of Laramie

"I, T. H. Baldwin, of Cheyenne, Wyoming, hereby certify that this map accurately represents the entire area within the Corporate Limits of the Town of Pine Bluffs as defined by resolution of the Town Council June 14, 1954 said area being described as follows: Sections 10, 15, the W½ W½ and Lots 1, 2, 3, and 4 of Section 11, the W½W½ and Lots 1, 2, 3, and 4 of Section 14, and the N½ Section 22, T. 14 N., R 60 W, 6th P.M. Laramie County, Wyoming. The area described is 2240 acres, more or less.

    "/s/ T. H. Baldwin

    "Engineer

    "Registration No. 19

"Approved as in accordance with resolution of the Town Council of the Town of Pine Bluffs, Wyoming, passed June 14, 1954 and recorded on page 308 of the minute book of said Council.

"Attest:

"/s/ D. B. Prouty    /s/ O. A. Elwood

    "Clerk           Mayor

"Map Showing

  Corporate Limits

      of

  Pine Bluffs

  Laramie County, Wyoming

  Scale 1" = 800'   June 1954

"The State of Wyoming } ss

"County of Laramie

"This instrument was filed for record at 2:08 o'clock PM on the 1 day of July A D 1954 and is filed in a folder 131

    "/s/ Lester R. Gopp

    "County Clerk & Ex-Officio

     Register of Deeds

    "By ——— Deputy"

Exhibit C indicates the Griffin land does lie within the Town limits as shown on the exhibit and as described in the Engineer's Certificate.

Griffin testified he acquired the particular property in question because he wanted land outside the Town limits; that he asked the county clerk's office for the official map of the Town; that he examined every record made available to him by the Laramie County Clerk's office and looked at every map brought him in that office and none showed his land within Town limits; that his attorney examined the abstract of title for the property and found nothing derogatory to Griffin's needs; and that a sign on the highway leading to the Town and located some distance west of the subject land, and east of any populated area of the Town, read "Pine Bluffs City Limits."

The abstractor who prepared the abstract for Griffin testified he searched the records in the Laramie County Clerk's office and found nothing to indicate the Griffin land was within the corporate limits of the Town; and that he did not examine the assessor's records or those of the clerk of court which contained the file of a suit brought by the State of Wyoming ex rel. John Wilkinson v. C. L. Beatty, and which was dismissed without trial.

A truck driver testified the sign on the highway showed the Griffin land was outside the Town limits.

The clerk of the District Court of Laramie County testified she had searched the records in her office and was unable to find any petition for the Town to annex the Griffin land and the only record she did find was the record of a civil action, State of Wyoming ex rel. John Wilkinson v. C. L. Beatty, which was dismissed without trial.

The deputy county clerk testified the plat, Exhibit C, was not in the index or abstract book of the county records and had not been abstracted because it was not notarized, but it was filed and set up in the plat book and indexed in the plat book; that a check of the tract book would not find

anything about the Griffin land; that in his search or check of the records he did not find a plat showing a portion of section 14 was included in the Town; that the minutes of the Board of County Commissioners of Laramie County, Thursday, March 4, 1909, shows the board considered the incorporation of the Town, there were no objections, a copy of the notice, the verified census, the plat verified by the surveyor, and the board referred the matter to the county and prosecuting attorney who reported all steps taken were in accordance with the statutes, and, on motion, the board appointed inspectors to proceed to take statutory steps in relation to incorporation of towns; that on April 9, 1909, the board's minutes showed a report from the inspectors was received and the county clerk was instructed to notify the inspectors to proceed with the election of officers; that he, the deputy county clerk, was unable to find among the county records the plat referred to in the county commissioner's minutes; that there were about seven different plats of the Town; and when he was speaking of failure to record certain plats because not acknowledged he was not referring to an *official* plat.

The former police judge and city clerk of the Town testified that section 14 was not included within the plat received as Exhibit B. However, the exhibit itself seems to show to the contrary, because a portion of section 14 appears but not that part where the Griffin land lies.

The Town's mayor testified that in 1953 it was decided to get a map of the Town; that no notice was given of that purpose and no one in the area had requested that it be done; that the Town took no proceeding to annex the Griffin land; and the Town had no plat showing the city limits before the 1954 plat (Exhibit C) was made.

· The engineer who prepared Exhibit C testified the boundaries as shown on that exhibit were dictated by the Town authorities; that he did not make a check of the County Assessor's office, or the court files,

and did not survey the exterior lines as shown on the plat; and that the Town said they wanted the area shown to be covered.

The Laramie County Assessor testified that from his records he considered the west half of section 14, which included the Griffin land, to be within the corporate limits of the Town; that no one in section 14 filed a protest at being taxed, but he did not know the original basis for including section 14 in the Town limits.

The Laramie County Treasurer testified Griffin has paid taxes.

A Town councilman testified he did not know the Town's boundaries when the engineer was requested to make Exhibit C and it would be fair to say the Town Council did not know the corporate limits, but had a general idea.

One of Griffin's predecessors in title said he supposed the land was in the Town but did not tell Griffin.

Little of this testimony affected the important issue of whether the Griffin land was within the Town limits. Fairly interpreted, it did establish that the original Town plat, referred to in the March 4, 1909, proceedings of the Board of County Commissioners of Laramie County was filed with the petition for the incorporation of the Town, but could not be found in the office of the County Clerk and Ex-Officio Register of Deeds, where by law it was required to be deposited. Section 15-141, W.S.1957.

The evidence of what was referred to in the testimony of witnesses as maps and plats of the Town, which were later filed in the County Clerk's office and in the Assessor's office, was valueless, as the maps and plats were not authenticated as being part of any statutory or legal procedures for either the incorporation of the original Town or the annexation to it of any additions, and they were not prepared from, nor were they based upon, any authentic record. If the statute provides the means and procedure by which a town may become

incorporated, or by which annexation may be made, that method and procedure is exclusive, and, in the same kind, the records made under that procedure are exclusive of any other binding record. See Pool v. Town of Townsend, 58 Mont. 297, 191 P. 385, 386.

The ascertainment of the Town limits was the crucial point in the law suit. The statutes in force at the time the Board of County Commissioners acted upon the petition to incorporate the Town required that a plat of the area to be incorporated be submitted and filed for record. We find no reason to doubt that the statutory procedure for incorporating the Town was observed and Griffin does not suggest it was not followed. When, however, the place where that important plat was filed has been searched and the plat is not found there, and the proceedings of the Board of County Commissioners furnish no description and no clue to the identity of the Town limits, neither the Town nor its officers are entitled to maintain that a particular land is within the Town's corporate limits unless it can show by proper secondary evidence the exact lines which demark its limits. When any records are lost or destroyed, Rule 44 of the Wyoming Rules of Civil Procedure provides the manner in which their legal substitution or replacement may be made. See also 76 C.J.S. Records § 42 et seq. The Town did not see fit to adopt the authorized procedures, but elected to attempt the substitution of the missing plat by plats of its own making without their verity being established.

While in the first instance it was incumbent upon Griffin to show the limits of the incorporated Town in order to further show that the Griffin land was beyond those limits, when the evidence adduced showed the absence from the county records of either the original plat of the incorporated Town or of any description by which the original limits of the Town could be identified, that sufficiently made a prima facie showing the Griffin land was not affected by the limits of the Town. When

the evidence further showed the exact location of the Griffin land, this, coupled with the absence of record evidence of the Town limits, sufficiently fulfilled the plaintiffs' burden of proof and completed prima facie proof there were no Town limits within which the Griffin land lay. It then became the obligation of the Town to prove, by whatever means were available to it, that the Town limits did in fact include the Griffin lands. This was not done. The maps or plats prepared and filed of record at the sole direction of the Town officers were valueless for that purpose. What Griffin, his agents, his predecessors, the Town, or county officers or employees *believed* about the matter was immaterial and of no probative force. Facts within their knowledge, if relevant, material and competent, would have been of evidentiary value, but the record does not disclose any such proof of facts which served to fix and establish the boundaries of the Town and show the Griffin lands to be within those limits.

■ We find no merit in appellee's position that this action was a collateral attack upon the corporate existence of the Town. No fault is found with appellee's authorities holding a private party may not challenge the corporate existence of municipalities or the validity of annexation proceedings. But they are not applicable here because the complaint in this case does not challenge either the corporate existence or the validity of any annexation proceedings of the Town. Griffin merely claims his land, from which the gasoline was sold and taxed, was not within the limits of the Town, and he sought recovery of such taxes paid under protest and injunction against their future illegal assessment and collection. That was the sole and simple issue. In Annotation 129 A.L.R. 256, it is said:

> "It would seem to be obvious that a suit seeking a judicial declaration that particular property is actually not within the boundaries of the taxing authority is not an attack, either collateral or direct, upon the existence of

the political entity, but is only a request for the interpretation and application of concededly valid provisions of its charter. Injunction is therefore available to determine the applicability of a tax to real property in cases where the only matter in issue is the actual location of the boundaries of the taxing authority. * * *"

The authorities cited thereunder amply justify the statement. See also Barton v. Stuckey, 121 Okl. 226, 248 P. 592, 593.

There is considerable in common between the present case and Board of Com'rs of Johnson County v. Searight Cattle Co., 3 Wyo. 777, 787, 31 P. 268, 273, as the earlier action was also brought to recover taxes paid under protest because of their alleged illegal assessment. In that case the court said, "The *gravamen* of the petition is that there was no property of the defendant in error subject to assessment or taxation * * *" and upon that premise it concluded the suit was in the nature of an action for money had and received, really an equitable action. If the area from which the municipally taxed gasoline was sold was not within the Town, the money received by the Town in payment under protest of taxes thereon should, in good conscience, be recoverable and future attempts to require similar payments should be enjoined. This has been legislatively recognized by § 39-157, W.S.1957, which expressly gives district courts jurisdiction of actions to recover back such illegally collected taxes and to enjoin future assessments and collections.

In A. M. Klemm & Son v. City of Winter Haven, 141 Fla. 60, 192 So. 652, 658, appeal dismissed 309 U.S. 638, 60 S.Ct. 810, 84 L.Ed. 993, rehearing denied 310 U.S. 656, 60 S.Ct. 897, 84 L.Ed. 1420, the Florida court points out the difference between prohibited challenges to municipal existence which are required to be brought by quo warranto proceedings in the name of the state and actions by an individual seeking protection against illegal taxation in these words:

"This Court has held that the validity of a municipal corporation should be tested by quo warranto proceedings; but this Court has not held that property rights may not, by appropriate proceedings other than quo warranto, be protected against illegal municipal taxation upon grounds of violation of organic property rights.

"Where municipal taxation would violate organic property rights that have not been lost by acquiescence, waiver or estoppel, such taxation may be prevented by appropriate judicial proceedings. * * *"

See also Chicago, B. & Q. R. Co. v. City of Nebraska City, 53 Neb. 453, 73 N.W. 952; Waubonsie Bridge Co. v. City of Nebraska City, 123 Neb. 832, 244 N.W. 793; Sharkey v. City of Butte, 52 Mont. 16, 155 P. 266.

The judgment of the district court must be reversed. The district court is directed to vacate its judgment and enter judgment for the plaintiffs; that plaintiffs have and recover from defendant the full amount of gasoline taxes levied and assessed against plaintiffs and paid by them under protest, together with interest thereon at the rate of seven percentum per annum from date of payment; that defendant be permanently enjoined and restrained from levying, assessing and collecting any such gasoline taxes upon or on account of any gasoline sales made by plaintiffs from their property described in their complaint; and that plaintiffs have and recover from the defendant their costs herein expended.

Reversed and remanded with directions.