**In re RIEDNER.**

No. 27512.

United States District Court
E. D. Wisconsin.
Aug. 25, 1950.

As Amended Sept. 29, 1950.

Benjamin F. Saltzstein, Milwaukee, Wis., for petitioner.

Timothy T. Cronin, U. S. Atty., by Howard W. Hilgendorf, Asst. U. S. Atty., Milwaukee, Wis., for the Government.

TEHAN, District Judge.

On September 14, 1949, Hedwig Lydia Riedner petitioned this court for a naturalization order under Section 317(a) of the Nationality Act of 1940, 8 U.S.C.A. § 717(a), which provides, in part, as follows:

"A person who was a citizen of the United States and who prior to September 22, 1922, lost United States citizenship by marriage to an alien or by the spouse's loss of United States citizenship, and any person who lost United States citizenship on or after September 22, 1922, by marriage to an alien ineligible to citizenship, may, if no other nationality was acquired by affirmative act other than such marriage, be naturalized upon compliance with all requirements of the naturalization laws with the following exceptions:

\*   \*   \*   \*   \*   \*

"Such person shall have, from and after the naturalization, the same citizenship status as that which existed immediately prior to its loss."

In her petition for naturalization, Mrs. Riedner alleged her marriage to a German alien prior to 1907, her continued residence in Germany, and her return to the United States in 1949 on an immigration visa. On the basis of these facts she concluded that she had lost her United States citizenship and so was eligible for the summary naturalization as provided in the above quoted law.

Thereafter, on October 19, 1949, an order was entered naturalizing Mrs. Riedner.

On November 10, 1949, Mrs. Riedner was informed by a letter to her then attorney that the Office of Alien Property would oppose a claim previously filed by her on April 29, 1949 for the return of certain of her property which had been vested for the use and benefit of the United States, pursuant to Vesting Order No. 5661, issued under the provisions of the Trading With the Enemy Act, as amended, 50 U.S.C.A.Appendix, § 1 et seq. This notification of opposition by the Office of Alien Property made it clear that return of Mrs. Riedner's vested property was highly unlikely under the terms of the Trading With the Enemy Act as amended, unless it could be shown that she had never lost her citizenship. Her original petition addressed to this court on September 14, 1949 and the naturalization order of October 19, 1949 were, of course, inconsistent with such a showing.

Hence, on December 9, 1949 this court was petitioned by Mrs. Riedner for the vacation of the naturalization order entered on October 19, 1949, and for an order adjudicating and determining that petitioner has always been and still is an American citizen. It is this petition which is now before the court for decision.

The application for relief is based upon Rule 60(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which provides, in part, as follows: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more

than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. * * * "

Specifically, petitioner is seeking relief from the naturalization order previously entered on the grounds of "mistake" and "excusable neglect".

The procedural questions involved, as well as the merits of the case, have been fully argued; and counsel for both the government and the petitioner have submitted full and learned briefs to the court upon both the procedural questions and those that go to the merits. It is well that this is so, because it is difficult, if not impossible, to exercise the discretion which is ours without having in mind all of the facts and circumstances which are pertinent to the merits as well as the procedural questions.

The petitioner, Hedwig Lydia Riedner, nee Werdehoff, was born in Milwaukee, Wisconsin, October 29, 1882. Her parents were citizens of the United States at the time of her birth. She married Wilhelm Riedner, a German citizen, at Munich, Germany, on December 17, 1906 and continued to reside with her husband in Germany from that time on until her return to the United States on an immigration visa on March 21, 1949. The petitioner states that sometime prior to March 1949 she applied to the United States Consulate at Munich for a passport to the United States and was informed by a member of the consulate staff that she had lost her United States citizenship by virtue of her marriage to Wilhelm Riedner on December 17, 1906 and her continued residence in Germany from that time on to 1949. Her husband still resides in Germany.

On April 29, 1949, shortly over a month after her return to this country, Mrs. Riedner filed a claim for a return of certain of her property vested under Vesting Order No. 5661. She stated in her Notice of Claim that she had acquired United States citizenship at birth and had married a citizen of Germany on December 17, 1906. She also stated that her then citizenship was German and that she had lost her United States citizenship by her marriage. Subsequently, Mrs. Riedner amended her claim to the effect that she had not lost her citizenship by her marriage in 1906.

Whether the statements in her claim were amended before or after her petition for naturalization, addressed to this court on September 14, 1949, does not appear from the record. However, on the last mentioned date she stated in her petition to this court that she had lost her United States citizenship by her marriage in 1906 and her continued residence in Germany and consequently was eligible for the summary naturalization provided for in Section 317(a) of the Nationality Act of 1940, 8 U.S.C.A. § 717(a).

Under date of September 29, 1949 and before the petition requesting the entry of an order of naturalization was acted upon by this court, Mrs. Riedner received a letter from the Immigration and Naturalization Service which read as follows:

"In connection with your petition for naturalization filed in the United States District Court, Milwaukee, Wisconsin, on September 14, 1949, this office obtained your visa file from our Central Office in Washington. This file indicates that the American Consul considered that you had become expatriated and issued the visa under Section 4(f) of the Immigration Act of 1924 [8 U.S.C.A. § 204(f)], in order that you might return to this country to be repatriated.

"Will you please inform this office in writing whether you desire to be repatriated, that is, have your petition presented to the Court at the next final hearing, or whether you desire to maintain that you have never lost your United States citizenship.

"If you decide upon the latter action, it will take several months to prepare your case for presentation to the Court." (Petition, Exh. B.)

The petitioner chose to proceed with her repatriation and was naturalized by the entry of an order of this court on October 19, 1949. The petition asking for the vacation of this order and the adjudication that the petitioner was at all times a citizen of the United States is founded upon the allegation

that her earlier petition to this court was made in reliance upon the representations made by the Consular's Office and the Office of Alien Property, and in consideration of her illness and the long delay referred to in the letter from the Immigration and Naturalization Service, and in ignorance of the law with reference to her status as a United States citizen. Counsel for the petitioner claims that this constitutes "mistake" or "excusable neglect" within the meaning of Rule 60(b) of the Federal Rules of Civil Procedure.

As pointed out by the Advisory Committee on Rules for Civil Procedure in its Report of Proposed Amendments, dated June 14, 1946: "It should be noted that Rule 60(b) does not assume to define the substantive law as to the grounds for vacating judgments, but merely prescribes the practice in proceedings to obtain relief." 5 F. R.D. 433, 479.

■ It should also be noted that while the granting or denial of an application to vacate a judgment is within the judicial discretion of the court, "The discretion is not an arbitrary one to be capriciously exercised, but a sound legal discretion guided by accepted legal principles." Assmann v. Fleming, 8 Cir., 159 F.2d 332, 336.

■ Whether Mrs. Riedner had lost her United States citizenship at any time can only be decided in these proceedings if the prior naturalization order of this court is vacated. If the court were to vacate the judgment, the substantive relief asked for would involve deciding a question already resolved by this court. On all applications for citizenship it is the duty of the court "to receive testimony to compare it with the law, and to judge on both law and fact." Spratt v. Spratt, 4 Pet. 393, 408, 7 L.Ed. 897. That was done at the time the petitioner's application for naturalization was before this court.

The law respecting the citizenship status of American women who married foreigners prior to the passage of the Act of March 2, 1907, 34 Stat. at L. 1228, as evolved through federal judicial decisions, has not followed an entirely consistent development. However, the largest division of opinion has occurred over the question as to whether the act of marriage to a foreigner would alone constitute an expatriation before this question was resolved by the Act of March 2, 1907. The weight of authority has consistently held, however, that marriage to a foreigner, together with withdrawal from the United States, does constitute expatriation. See analysis of authorities In re Wright, D.C., 19 F. Supp. 224. The case of Petition of Zogbaum, D.C., 32 F.2d 911, cited by counsel for the petitioner and which holds to the contrary, stands practically alone.

■ A judgment or order of the court in a naturalization proceeding has the same characteristics of conclusiveness and finality as other judgments. It is no more subject to attack than other judgments. A naturalization order has been properly described as follows: "Being a judgment with the ordinary characteristics or attributes of a judgment of a court of record importing verity, it is not more vulnerable to attacks upon its validity and effectiveness as a final and conclusive adjudication than any other judgment of a court of record having competent jurisdiction in the premises." United States v. Aakervik, D.C., 180 F. 137, 142.

■ The general characteristics of a personal judgment are best described by the Restatement of the Law of Judgments, as follows:

"Where a reasonable opportunity has been afforded to the parties to litigate a claim before a court which has jurisdiction over the parties and the cause of action, and the court has finally decided the controversy, the interests of the State and of the parties require that the validity of the claim and any issue actually litigated in the action shall not be litigated again by them.

\* \* \* \* \* \*

"The principle stated in this Section is applicable although the judgment was erroneous, either on the law or on the facts." Restatement, Judgments, Sec. 1.

Section 118(b) of the same authority says, in part: "In order to prevent the retrial of every case where a claim of fraud or mistake can be made, equitable relief ordinarily will be denied in cases where the sole ba-

sis of relief is that the judgment was erroneous because of the error or ignorance by the court or of one of the parties, * * * Equitable relief will be given only in a limited number of situations where the judgment was rendered after proceedings in which the present complainant was deprived of an opportunity of presenting adequately his claim or defense. * * *"

And again, in Section 126(2) (e) of the same authority, the following appears: "Although a judgment is erroneous and inequitable, equitable relief will not be granted to a party thereto on the sole ground that the judgment was the result of a mistake of law or of fact by the court or by the present complainant or his attorney."

It has been held in a number of cases that a mistake of law by an attorney will not support a motion for relief from a judgment upon the ground of mistake, inadvertence or excusable neglect; a mistake, to support such a motion, must be one of fact and not of law. See, Kingsbury v. Brown, 60 Idaho 464, 92 P.2d 1053, 124 A.L.R. 149 and the cases cited therein. Also, the case of Gelin v. Hollister, 222 Minn. 339, 24 N.W.2d 496, 502, 168 A.L.R. 195, 203, points out that, "Judgments may be vacated on motion *where the ground therefor is something extraneous to the action of the court.*" (Emphasis supplied.)

It is true that expressions of law cited above do not relate directly to substantive questions arising under Rule 60(b) of the Federal Rules of Civil Procedure which is applicable here. However, as previously noted, the Advisory Committee on the rules points out that Rule 60(b) "does not assume to define the substantive law as to the grounds for vacating judgments." 5 F.R.D. 433, 479.

Furthermore, an examination of the cases decided directly under Rule 60(b) discloses that they are well in line with the general principle of law enunciated under similar statutory provisions of the several states and the authorities cited above.

The only case which seems to lend any credence to the position urged by the petitioner is the case of Fleming v. Huebsch Laundry Corporation, 7 Cir., 159 F.2d 581.

Without venturing an opinion on the soundness of that decision, it is nonetheless, clearly distinguishable from the case here under consideration. In the Huebsch case the court found "excusable neglect" in a party's failure to know of the existence of OPA regulations, and interpretations of those regulations which appeared in an OPA Desk Book not available even to the court. In that case the court said, 159 F.2d at page 584, "The evidence, to-wit, the existence and construction of the Regulation, was unknown and unavailable to defendant." The situation here is not at all comparable. No claim is made by the petitioner that the applicable laws were either unknown or unavailable to her or her counsel; nor, indeed, could such a claim be made. On September 29, 1949, and while Mrs. Riedner's petition for naturalization was pending in this court, she received a letter from the Immigration and Naturalization Service which clearly stated,

"Will you please inform this office in writing whether you desire to be repatriated, that is, have your petition presented to the Court at the next final hearing, or whether you desire to maintain that you have never lost your United States citizenship.

"If you decide upon the latter action, it will take several months to prepare your case for presentation to the Court." (Petition, Exh. B.)

As the above quoted letter demonstrates, the alternative courses of action were clearly pointed out to the petitioner. It is now being urged that the several months' delay referred to in the letter, together with the severe illness of the petitioner, compelled her to accept a Hobson's choice and constitutes excusable neglect. However, on April 29, 1949, in her original claim filed with the Office of Alien Property the petitioner had also stated that she had lost her United States citizenship by her marriage and withdrawal from this country. It seems to this court that Mrs. Riedner was in a position to make an informed and considered choice between the several courses open to her, and that there was no "mistake" or "excusable neglect" within the meaning of Rule 60(b).

294

There are also present here two unresolved questions: (1) Whether Mrs. Riedner did or did not vote in the 1946 elections in Germany, and (2) Whether those said elections were "political elections in a foreign state". The record reveals that the 1946 elections held in occupied Germany were of the same type, if not the identical elections, considered in the case of Brehm v. Acheson, D.C., 90 F.Supp. 662. We agree with the conclusion reached by the learned judge therein that participation in such elections was not "Voting in a political election in a foreign state or participating in an election or plebiscite to determine the sovereignty over foreign territory" within the meaning of Sec. 801(e), Title 8 U.S.C.A. In view of the conclusions above reached, it is not necessary for the court to resolve the question of whether Mrs. Riedner voted as claimed by the government and substantiated by documentary proofs, or whether she did not vote as she herself maintains.

The petition to vacate the naturalization order of October 19, 1949 is denied.