**JOHN E. SMITH'S SONS COMPANY,**
**Plaintiff,**

v.

**LATTIMER FOUNDRY & MACHINE**
**COMPANY, Defendant.**

No. 4493.

United States District Court
M. D. Pennsylvania.

July 30, 1956.

Bedford, Waller, Griffith, Darling & Mitchell, Wilkes-Barre, Pa., for plaintiff.

James P. Costello, Jr., Hazleton, Pa., for defendant.

JOHN W. MURPHY, Chief Judge.

In this diversity action, after a contested trial upon the merits, the jury on June 1 returned a verdict of $8,000 for the plaintiff. Judgment was entered forthwith by the Clerk.[1] June 5 defendant filed a motion for a new trial.[2] June 8 defendant's counsel ex parte and without notice to plaintiff's counsel asked and was granted permission to assign additional reasons upon receipt of a copy of the transcript of testimony, provided a copy of the transcript was ordered. June 14 plaintiff's counsel forwarded an exemplified copy of the judgment to plaintiff and advised that defendant had not moved for a new trial. June 15 one of defendant's counsel phoned the office of the plaintiff's counsel and informed a secretary that he was filing a motion for a new trial, a copy of which would be sent through the mail. While defendant's counsel had not spoken to plaintiff's counsel about the matter he "felt" that they would not raise any objection to the delay. June 16 a copy of the motion and order was mailed and on June 17 received at the office of plaintiff's counsel. June 28 plaintiff's counsel moved to strike defendant's motion for a new trial because

1. Absent any direction otherwise by the court. See Fed.R.Civ.Proc. 58, 79(a), 28 U.S.C.; Greenwood v. Greenwood, 3 Cir., 234 F.2d 276.

2. That the verdict was against the law and the evidence; no proper support for amount thereof; error in ruling on evidence and in the conduct of the trial

it was not served within the ten day period required by Rule 59(b).[3]

At the hearing on plaintiff's motion on July 6 defendant's counsel requested denial of the motion under Rule 60(b) (1, 6).[4] No facts or reasons for delay were assigned, counsel merely asking the court to apply subsections (1) and (6) of Rule 60(b).[5]

█ The provision of Rule 59(b) requiring that a motion for a new trial be served not later than ten days after entry of the judgment is mandatory. Cf. Greenwood v. Greenwood, 3 Cir., 1955, 224 F.2d 318, 319. Rule 6(b) prohibits any enlargement of the time. Cf. Leishman v. Associated Wholesale Electric Co., 1943, 318 U.S. 203, at page 206, 63 S.Ct. 543, 87 L.Ed. 714;[6] Safeway Stores, Inc., v. Coe, 1943, 78 U.S.App.D.C. 19, 136 F.2d 771, at page 775, 148 A.L.R. 782, "We think that the purpose of Rule 6(b), which forbids the court to enlarge the time for taking any action under Rule 59, was to divest the court of jurisdiction to entertain a motion * * * filed out of time."[7] Raughley v. Pennsylvania R. Co., 3 Cir., 1956, 230 F.2d 387, at page 390, " * * * 6(b) renders a court powerless to entertain such motions when untimely made" and where the court acts contrary to such a mandate its action "must * * * be considered as a nullity." Id.[8] Merely filing is not enough, cf. Steward v. Atlantic Refining Co., 3 Cir., 235 F.2d 570.

█ Here there was no stipulation or agreement of counsel for an extension of time. Even if there was it does not excuse non-compliance.[9] "An agreement with opposing counsel * * * is not an acceptable reason for failure to comply with the rules * * *." Citizens' Protective League, Inc., v. Clark, 1949, 85 U.S.App.D.C. 282, 178 F.2d 703, at page 704; Slater v. Peyser, 1952, 91 U.S. App.D.C. 314, 200 F.2d 360, 361; see and cf. Raughley v. Pennsylvania R. Co., supra, 230 F.2d at page 391; Orange Theatre Corp. v. Rayherstz Amusement Corp.,

---

3. The motion read 59(d).

4. "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment * * * for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect * * * (6) any other reason justifying relief from the operation of the judgment."

5. See and cf. Rule 7(b), " 'An application * * * shall state with particularity the grounds therefor * * *.' " Raughley v. Pennsylvania R. Co., 3 Cir., 1956, 230 F.2d 387, at page 391, and see Ledwith v. Storkan, D.C.D.Neb., 2 F.R.D. 539.

6. Do.59(d), where the court acts on its own initiative. Greenwood v. Greenwood, 3 Cir., 234 F.2d 276.

7. And we add "or serve".

8. See discussion of 1946 Amendment, Statements of Advisory Committee and authorities cited, and see United States v. Young, 7 Cir., 1955, 219 F.2d 108; National Farmers Union Auto & Casualty Co. v. Wood, 10 Cir., 1953, 207 F.2d 659; Principale v. Associated Gas & Electric Co., 2 Cir., 1951, 192 F.2d 1016; Nachod & United States Signal Co., Inc., v. Automatic Signal Corp., D.C.Conn., 26 F. Supp. 418; Theiss v. Owens-Illinois Glass Co., D.C.W.D.Pa., 1 F.R.D. 175; United States v. Erie County, D.C.W.D.N.Y., 8 F.R.D. 493; Petersen v. Chicago, Great Western Ry. Co., D.C.Neb., 3 F.R.D. 346, 347; Dugo v. Pennsylvania R. Co., D.C. W.D.Pa., 125 F.Supp. 934; Schuyler v. United Air Lines, Inc., D.C.M.D.Pa., 94 F. Supp. 472, 477, affirmed, 3 Cir., 1951, 188 F.2d 968; Walling v. Todd, D.C.M. D.Pa., 3 F.R.D. 490; cf. McHugh v. Audet, D.C.M.D.Pa., 72 F.Supp. 394, at page 403; Cheffey v. Pennsylvania R. Co., D.C.E.D.Pa., 79 F.Supp. 252, at page 259.

9. Conceding that the liberal Rules of Civil Procedure must not be transformed by judicial interpretation into a technical trap for the unwary and that review should not be denied on mere technicalities where this can be avoided, see Witt v. Merrill, 4 Cir., 1953, 208 F.2d 285, at page 286. " * * * discretion to avert injustice because of mistake or inadvertence of counsel should not be confined, and by the rule cited is not confined, by arbitrary limitations." La Barbera v. Grubard, 2 Cir., 1940, 112 F.2d 738, at page 739.

3 Cir., 1942, 130 F.2d 185, at pages 186, 187, "* * * courtesies extended by counsel * * * although commendable as professional comity cannot be permitted to interfere with what we think the Rules require", and see Id., 3 Cir., 1944, 139 F.2d 871, at pages 872, 873; 6 Moore's Fed.Prac., Rev. Ed., § 59.09(1), p. 3847, footnote 28, "It is not justifiable to allow the parties, without any court supervision, to thwart that policy, when they cannot, even with court leave do so." And see United States v. Mayer, 1914, 235 U.S. 55, at page 70, 35 S.Ct. 16, 59 L.Ed. 129.[10]

■ The authority, if any, over the protest of plaintiff's counsel, to entertain defendant's motion for a new trial must be found within the four corners of Rule 60(b) (1, 6). See and cf. Federal Deposit Insurance Corporation v. Alker, 3 Cir., 234 F.2d 113, 115, "Rule 59 provides for the *ordinary* motion for a new trial which must be served not later than 10 days after the entry of judgment * * *. Subsequent relief from a judgment is authorized by Rule 60." Certainly that opinion, 234 F.2d at page 116, suggests the possibility of doubt as to our authority. See Id., 234 F.2d at page 116, "The question * * * is not whether Rule 60 (b) bars the granting of a new trial but rather whether it authorizes it. For the power of the district court to grant a new trial upon an application made more than 10 days after judgment is derived solely from that rule. It is true that clause (5) of Rule 60(b) authorizes such relief for the reason that it is no longer equitable that the judgment should have prospective operation and that clause (6) au-

thorizes such relief for any reason, *other than* those enumerated in the five preceding clauses, justifying relief from the operation of the judgment, provided in each case that the application for relief is made within a reasonable time. * * * But * * * it is clear that such an application for *extraordinary* relief must be fully substantiated by adequate proof and its *exceptional* character must be clearly established to the satisfaction of the district court before it can be granted by the court."[11] [12]

"Opinion varies sharply concerning the extent to which relief should be granted from a judgment. This divergence necessarily results from a clash of the two principles that litigation must terminate within a reasonable time, but that justice must be accorded the parties." 6 Moore, op. cit. supra, p. 4013.

"It is to be remembered * * * that the same Rule governed both default judgments and those in non-default cases, a field in which a good deal of discretion has always been exercised * * *." Vol. 10, Cyc. of Federal Procedure, Ch. 37, § 37.01, p. 292.

"Where timely relief is sought from a default judgment and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment so that cases may be decided on their merits." 7 Moore, op. cit. supra, § 60.19, p. 224; see Tozer v. Charles A. Krause Milling Co., 3 Cir., 1951, 189 F.2d 242; Peardon v. Chapman, 3 Cir., 1948, 169 F.2d 909, at page 913; Chapman v. Henry A. Dreer, Inc., D.C.E.D.Pa., 14 F.R.D. 218; Bridoux v. Eastern Air Lines, Inc., 1954, 93 U.S.

---

10. Cf. Whayne v. Glenn, D.C.W.D.Ky., 114 F.Supp. 784, but see comments Moore, op. cit. supra, Vol. 6, § 59.09(1), p. 3846.

11. (Italics supplied). As to the procedure, see Id. and Klapprott v. United States, 1949, 335 U.S. 601, 69 S.Ct. 384, 93 L. Ed. 266; Id., 336 U.S. 942, 69 S.Ct. 398, 93 L.Ed. 1099; Ackermann v. United States, 1950, 340 U.S. 193, at page 202, 71 S.Ct. 209, 95 L.Ed. 207.

12. "The district court may not consider as reasons justifying relief under clause (6) mistake, inadvertence, surprise, excusable neglect, newly discovered evidence or fraud, the reasons justifying relief under clauses (1), (2) and (3) of Rule 60(b)." Id. citing United States v. Karahalias, 2 Cir., 1953, 205 F.2d 331, at pages 334, 335; Vaughan v. Petroleum Conversion Corp., D.C.D.Conn., 120 F.Supp. 175, 179, affirmed, 2 Cir., 1954, 211 F.2d 499.

App.D.C. 369, 214 F.2d 207. "This entire field * * * is so highly discretionary and dependent upon the facts that can be marshaled in a particular case that precedents are of little value save to illustrate the . scope and extent of that discretion." Cyc. of Federal Procedure, supra, § 37.01, p. 292.

"Piercing the veneer of phrases, the decisions disclose that federal courts have always exercised broad discretion to right obvious injustices and to give a hearing to any apparently bona fide claim or defense the failure to make or adequately present which, *before judgment*, was satisfactorily excused." [13] Id. p. 293. (Italics supplied.)

Since there are no allegations in the motion or petition seeking relief under Rule 60(b), see and cf. note 5, supra, we can only assume that defendant's counsel rely upon mistake, inadvertence, or excusable neglect.[14] It must be remembered that what defendant seeks presently is not relief from a judgment per se but to have his motion for a new trial considered and a new trial granted. Cf.

Jusino v. Morales and Tio, 1 Cir., 1944, 139 F.2d 946, 947.

Vol. 10, Cyc. of Federal Procedure, Ch. 37, § 37.01, p. 292, states, "No one has ever fathomed the exact significance of the phrasing. 'Mistake' is rarely an excuse in the law and is generally frowned upon; 'surprise' is scarcely ground for a continuance, unless well justified; 'inadvertence' means unpreparedness, which is certainly no excuse in earlier stages of a lawsuit; and 'excusable neglect' is a self-nullifying term, because that which is adequately excusable is not neglect."

Mr. Justice Frankfurter in Klapprott. v. United States, supra, 335 U.S. at page 630, 69 S.Ct. at pages 397, 398, suggests that "neglect" in the context carries the idea of negligence and not merely non-action.

Ordinarily to obtain relief one must be free from negligence. Simonds v. Norwich Union Indemnity Co., 8 Cir., 1934, 73 F.2d 412, at page 415; Continental National Bank v. Holland Banking Co., 8-

13. E. g., cases where relief from judgment was granted. See 7 Moore, op. cit. supra, § 60.22(2), p. 231; In re Gsand, 3 Cir., 1946, 153 F.2d 1001, at pages 1005, 1006, judgment result of unauthorized stipulation by attorney; Kwasizur v. Cardillo, 3 Cir., 1948, 175 F.2d 235, at page 237, unauthorized appearance by adversary; Weller v. Socony Vacuum Oil Co. of New York, D.C.S.D. N.Y., 2 F.R.D. 158, attorney's clerk failed to file a more definite statement; Soriano v. American Liberty Steamship Corp., D.C.E.D.Pa., 13 F.R.D. 455, dismissal for want of prosecution; United States for Use of Kantor Bros., Inc., v. Mutual Construction Corp., D.C.E.D.Pa., 3 F.R.D. 227, counsel engaged full time in another court neglected to file answer; La Barbera v. Grubard, 2 Cir., 1940, 112 F.2d 738, denial of discharge in bankruptcy for failure to appear resulting from misunderstanding; Standard Grate Bar Co. v. Defense Plant Corp., D.C.M.D. Pa., 3 F.R.D. 371, belief of one defendant that it was being represented by counsel for another; Deane v. Michigan Processed Foods, Inc., D.C.W.D.Mich., 5 F.R.D. 508, excusable neglect in mis-

interpreting rules; Wolfsohn v. Raab, D.C.E.D.Pa., 11 F.R.D. 254, miscalculation of counsel and delay of one day in filing answer, and see Barber v. Turberville, 1954, 94 U.S.App.D.C. 335, 218 F. 2d 34, but cf. dissenting opinion at p. 37. "These decisions necessarily involve the application of a sound discretion by the trial court to the facts of the particular case." Moore, supra, Id. p. 232.

14. See 6 Moore, op. cit. supra, § 59.09(3), p. 3852, " * * * the court may treat the untimely motion as one for relief under Rule 60 * * * if the facts alleged in the motion warrant relief under the latter rule." Id., § 59.04(7), p. 3719, note 13, but see and cf. United States v. Wissahickon Tool Works, Inc., 2 Cir., 1952, 200 F.2d 936, at page 938, "None of the grounds specified in the rule * * * seem apposite to the contentions * * * in the motions"; National Farmers Union Auto & Casualty Co. v. Wood, supra, 207 F.2d at page 661; Creedon v. Smith, D.C.N.D.Ohio, 8- F.R.D. 162, especially when the court has been divested of jurisdiction over the judgment.

Cir., 1933, 66 F.2d 823, at page 829; Knox County v. Harshman, 1890, 133 U.S. 152, at page 154, 10 S.Ct. 257, 33 L.Ed. 586, "Relief is denied from error resulting from gross carelessness," 7 Moore, op. cit. supra, p. 233, citing Greenspahn v. Joseph E. Seagram & Sons, Inc., 2 Cir., 1951, 186 F.2d 616, at page 619, "gross carelessness"; 5 Williston on Contracts, Rev.Ed., § 1427, p. 3997; Fischer v. Dover Steamship Co., Inc., 2 Cir., 1955, 218 F.2d 682, 683.

Mr. Justice Minton in Ackermann v. United States, supra, 340 U.S. at page 198, 71 S.Ct. at page 211, speaking for the court states that there "must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." See Kahle v. Amtorg Trading Corp., D.C.N.J., 13 F.R.D. 107; In re Riedner, D.C.E.D.Wis., 94 F.Supp. 289; Ledwith v. Storkan, D.C.D.Neb., 2 F.R.D. 539; Baron v. Leo Feist, Inc., 2 Cir., 1949, 173 F.2d 288, 290. See and cf. cases, supra, note 8 and see 7 Moore, op. cit. supra, § 60.10(7), pp. 17 to 21, discussing possible relief under the California decisions, "* * * defaults would not be set aside where dates for filing pleadings were confused by counsel." pp. 19–20.

See 3 Blackstone's Commentaries, p. 392, "A sufficient ground must * * * be laid before the court, to satisfy them that it is necessary to justice that the cause should be further considered." While it is elemental that courts favor the trial of causes of action upon their merits, their discretion is not an arbitrary one to be capriciously exercised but a sound legal discretion guided by accepted legal principles. Assmann v. Fleming, 8 Cir., 1947, 159 F.2d 332, at page 336. If relief were afforded in the present case it would render the prohibition of Rule 6(b) meaningless. A party is not relieved from the duty to take legal steps to protect his interests. 3 Barron and Holtzoff, Federal Practice and Procedure, Pocket Part, § 1329. "Litigants and their counsel may not properly be allowed to disregard process or procedural rules with impunity." 7 Moore, op. cit. supra, p. 224.

In view of the foregoing, we were in error in not granting plaintiff's motion to strike the motion for a new trial.

However, upon examining the reasons assigned in support of defendant's motion for a new trial, reading the testimony and considering the briefs and arguments of counsel, we find no reason for disturbing the verdict of the jury. Ordinarily the motion should therefore be denied.

Plaintiff, a New York corporation, manufactures food processing machinery at Buffalo, New York. Defendant, a Pennsylvania corporation, manufactures gray iron castings at Lattimer Mines, Pennsylvania, in this district. There was substantial, competent, credible evidence from which the jury could have found and, in support of the verdict we may assume, did find that between January 31, 1947 and November 2, 1948, upon periodic orders placed by plaintiff, defendant manufactured and shipped to plaintiff various castings amounting to $45,229.-06.[15] Plaintiff needed those castings for the manufacture and assembly of sausage stuffing machines. Rough castings had to be machined to precise dimensions and to be of sufficient strength and quality to withstand pressure on final tests and in operation. Defendant was fully apprised of plaintiff's needs and of the purpose for which the castings were intended.[16] Af-

---

15. First shipment, S401 small cylinder, January 31, 1947; S402 safety ring, S403 stuffer cover, S405 piston top, S406 piston bottom, April 30, 1947; S80 large cylinder, May 29, 1947.

16. Through Ellis B. Dorl, who originally in soliciting the business stated that he acted as a representative on behalf of defendant; June 4, 1947, Dorl promised a finer grain; a visit to defendant's plant by P. J. Coll, defendant's manager, August 1947; by G. M. Benner, defendant's work manager and chief engineer in March 1948, and in correspondence between plaintiff and defendant. Plaintiff's

ter negotiating as to price and defendant's ability to supply, plaintiff submitted plans, defendant made a pattern, manufactured a sample casting and shipped it to plaintiff.[17] Upon inspection, suggested changes were made and each sample was approved.[18] June 23, 1947, plaintiff found an S401 casting to be unlike those shipped previously.[19] After making every effort to adapt it to plaintiff's needs, the casting was rejected, defendant notified of its rejection and the casting was returned to defendant's plant with a request for credit. Similar difficulties arose with other castings.[20] August 7, 1947, E. T. Coll, of defendant company, discussed the matter with Dorl[21] and sent P. J. Coll, defendant's manager,[22] to plaintiff's plant to go over the problem of providing satisfactory castings.[23] Coll promised improvement.[24]

Up to August 1, 1947, all rejected castings were returned to defendant collect. Finding the cost of transportation prohibitive defendant asked and plaintiff agreed thereafter to sell rejected castings locally as scrap at the then current price of $35 per gross ton, crediting defendant for the amount received.[25]

September 5, 1947, having had very poor luck with defendant's castings, plaintiff wrote defendant that it had rejected a majority of them. September 25, 1947, "* * * kindly * * * advise why the iron should be running this way as we expected * * * after your recent visit * * * you would be able to give us a finer grain iron than previously."[26] October 10, 1947, "* * * no recent rejects * * * the grain of the metal is still quite open and much coarser than we would like to have it. We wrote you * * * September 25, * * regard to this * * * as yet * * * no reply * * * wondering what you could do to correct this condition." October 14, 1947, defendant replied, "A material control over the charges in the cupola has been instituted * * * resulted in a finer grain material. * * * confident * * * our foundry will now pour a high quality iron."

As rejections continued, in fact increased,[27] defendant in early March 1948 sent G. M. Benner, sometimes described as its works manager and chief engi-

Exs. 18a, b, 21. Defendant paid Dorl 5% on all castings sold to plaintiff.

17. As to S401, S80; plaintiff supplied patterns for the others.

18. After some difficulty as to S80.

19. Very open grain. Plaintiff suggested possibly due to defect in defendant's procedure; defendant's manager, possibly due to a new mixture used at defendant's plant. Plaintiff's Ex. 18a, defendant's Ex. 5.

20. July 2, 1947, on sample S80. Defendant's Ex. 5. See letter July 10, 1947, plaintiff's Ex. 18e; July 17, 1947, defendant's Ex. 5. July 3, 1947, four S405s, "welding", plaintiff's Ex. 18a, e. Defendant thought "hard spots" occasioned during casting. August 1, 1947, four out of six S403s, plaintiff's Ex. 18f. September 5, 1947, S406, plaintiff's Ex. 18k, "Poor luck with S403s recently". September 25, 1947, plaintiff's Ex. 18L, two of four S402s.

21. Plaintiff's Ex. 18h, g, j, i.

22. Plaintiff's Ex. 18c. See note 16 supra.

23. Meanwhile an S80 was rejected and scrapped before learning of Coll's visit. Plaintiff's Ex. 18g and j.

24. An attempt to weld an S401 failed; improper fusion apparent especially under reflected light. See letter August 18, 1947, plaintiff's Ex. 18i; letter September 5, 1947, necessary to reject S401, S406, "Very poor luck with S402 * * * recently. The majority of castings we have are rejected," plaintiff's Ex. 18k; September 25, 1947, rejected two of four S402s, complaining as to S401, plaintiff's Ex. 18L.

25. See defendant's Ex. 5, July 29, 1947, August 1, 1947.

26. Plaintiff's Ex. 18L, defendant's Ex. 5. See complaint October 17, 1947, as to S80. Cf. letter October 21, December 31, 1947, S401, "Take steps to correct it immediately."

27. Plaintiff phoned January 20, 1948, sixteen S402s rejected.

neer,[28] to plaintiff's plant. Assurances were once again given of improvement. March 29, 1948, "* * * later shipments * * * S401 * * * all defective * * * recently machined six * * * reject all * * *.[29] Since our recent conference * * * heard nothing * * * regard to improvement of iron and grain structure in * * * cylinders * * * kindly advise what progress * * * in overcoming this trouble * * *" April 3, 1948, defendant replied, "* * * the cylinders you * * * have on hand were cast before our conference * * *. Upon returning * * * we suspended activity on * * * large cylinders until our experiments showed improvement in the grain structure of our iron * * * sorry * * * so many of our later shipments defective * * * trust you will find a great improvement in the quality of the cylinders we are shipping * * * Appreciate * * * advising * * * scrap price * * * aid * * * in determining whether * * * want * * * returned * * *" Plaintiff advised $45 per ton ($35 until six weeks ago). Defendant replied, "* * * price * * * satisfactory at this time * * *" Plaintiff, "* * * note * * * price * * * satisfactory * * * will continue to dispose of * * * defective castings by selling these here at the above price."[30] April 7, plaintiff replied, "Will immediately put them in to work * * * and * * * report on the quality of the iron."

April 19, 1948, defendant commented on an experimental S80 casting, advising that it would be several weeks before they could get into production on both cylinders, promising further improvements in its iron. April 21, 1948, plaintiff wrote "wondering as to the cause of the delay * * * we believed that as soon as you overcame the trouble of the poor metal you were obtaining * * * you would be able to swing into volume production at once." May 5, 1948, plaintiff by phone rejected an S401, another on May 12, May 18, June 7, 1948, suggesting perhaps the molder working on the S401 was responsible.

June 11, 1948, defendant shipped an S401 and S80 for the first time identifying them by special mark, asking for an early machining and report; "* * * changed * * * content of our charge and * * * method of casting * * * believe will produce satisfactory unit * * * Appreciate your returning one of the rejected S401 at our expense for our study * * * trust improvement made in our castings will meet your requirements * * *" June 14, two more S401 returned. After June 22, 1948, all rejected castings were returned to defendant collect. June 25 defendant shipped another S80, S401 specially marked asking for an early report; July 2 rejected four S402, recorded by defendant July 15; July 13, an S401; August 4, an S80; August 23, an S401, "advise if * * * return or scrap it here"; August 27, "sorry * * * please return"; September 1, another S401, "kindly advise disposition". September 2, plaintiff in rejecting another S401 wrote, "The trouble is the same as on former castings * * * wide open grain * * * We do not seem to be getting anywhere with the problem of satisfactory castings on * * * S401. If anything the situation * * * is getting worse as the defects are greater * * * We believe a visit * * * by your Mr. Benner would be in order, to help overcome this trouble * * * we could show him a comparison * * * between * * * cylinders * * * satisfactory and those which are not." September 20, 1948, defendant by telegram asked return of all rejected castings. September 27, 1948, rejected S80, kindly advise disposition; October 4, 1948, defendant inquired type of casting on hand, plaintiff replied only one S80. Oc-

28. Defendant's Ex. 5, April 19, 1948, June 25, 1948, July 15, 1948.

29. Plaintiff's Ex. 18m.

30. April 3, 1948, April 7, 1948, April 10, 1948, April 21, 1948.

tober 10 plaintiff asked defendant to ship additional S401s.

October 11, 1948, Mr. Coll and Mr. Benner, studying castings, conferred with local foundry men as to casting difficulties —S401 promised had not been cast because defendant found no way of alleviating the difficulties. Defendant could see no use in making another which would undoubtedly result in another rejection. However, on October 12, 1948, defendant stated that an S401 would be poured and shipped, "Believe found method that will improve the grain". November 2, 1948, plaintiff found loose grain and spongy spot but used it. Same day plaintiff called inquiring about lack of castings, requesting return of one of S401 patterns.

November 16, 1948, defendant informed plaintiff they were giving up on S401 casting as they could not make a successful casting on that item. Plaintiff's Ex. 18x. February 1, 1949, plaintiff rejected one S405, one S406, sending a debit memo for $86.22. Finally on May 10, plaintiff rejected one S406, sending a debit memo dated May 4 for $21.22.

As we indicated above, on September 5, 1947, the plaintiff advised defendant, "The majority of castings we have are rejected." Defendant on September 11 asked for a schedule of rejections, replacements and scrapped items. Plaintiff pressed for additional castings of improved quality. Apart from complaints, the next notice of rejection was a phone call on January 20, 1948, as to sixteen S402s. Meanwhile, unknown to plaintiff's executives the chief of their auditing department was seriously ill and neglected to forward debit memoranda and notice of rejections to defendant. Upon his visit to plaintiff's plant on March 10 plaintiff gave Mr. Benner a list of 82 castings rejected between July 8, 1947 and January 29, 1948, amounting to $4,969.43, less scrap $707.85,[31] balance $4,261.58. Plaintiff's Ex. 11. No allowance was made for replacement of seven castings, $678.98.

In a letter dated April 19, 1948, defendant expressed surprise and shock at the number and value of rejections, claiming that it had prior notice of only 31 or 32 rejections valued at $2,130.68; that the dates and items did not correspond with defendant's file. Actually defendant overlooked plaintiff's letter of September 5, 1947, rejecting an S401, S406, "very poor luck with S402 * * * recently * *", and see supra; the ambiguity in plaintiff's letter of July 17, 1947, as to an additional S80; the inquiry of August 10, 1947, as to an S401; the doubt expressed in the letter of September 25, 1947, as to the usability of S401. See and cf. returned and scrapped castings, plaintiff's Ex. 2, 3 and 6. April 21, 1948, plaintiff's accountant was instructed to forward invoices at once and to avoid delay in giving notice of rejections. Plaintiff's practice was to take advantage of defendant's cash discount and to make payment promptly of all invoices. If there was a rejection plaintiff would debit defendant. See N.T. pp. 11, 33, 106.[32] May 4, because of the previous delay in notifying defendant of rejections, plaintiff agreed that instead of withholding payment of current invoices equivalent to the value of the rejections, it would deduct the amount of the rejections at a rate of 10% on each invoice thereafter.[33] June 7 plaintiff admitted

---

31. 44,044 lbs. @ $35 per gross ton, $707.-85.

32. Except three invoices on which payment was withheld,

| | | |
|---|---|---|
| November 17, 1948 | — | $1172.25 |
| | | 221.40 |
| December 1, 1948 | — | 289.25 |
| | | $1682.90 |

33. 10% deductions were thereafter made as follows:

| | | |
|---|---|---|
| May 12, 1948 | — | $ 365.37 |
| May 19, 1948 | — | 41.80 |
| May 21, 1948 | — | 139.47 |
| June 7, 1948 | — | 93.06 |
| June 21, 1948 | — | 152.46 |
| August 10, 1948 | — | 299.27 |
| September 7, 1948 | — | 83.67 |
| Total | | $1178.10 |

that it was negligent in the matter of rejections; that apparently the list given Mr. Benner was not entirely correct; that they would have their bookkeeper prepare a corrected list. June 25 plaintiff sent defendant a complete analysis of defective castings between February 9 and June 22, 1948, allowing credit for replacements; [34] explained its inability to tell the date of arrival of castings when rejected because of the lack of identifying marks; of its being unable to determine whether or not a casting was defective until after it was machined and that the latter could not always be done promptly.[35] Plaintiff expressed its regrets for delay in forwarding a reply, advising that it was due to the protracted illness in the accounting department, and promised monthly reports thereafter. That appears to have settled the matter insofar as correspondence is concerned. See reports and letters of July 29, plaintiff's Ex. 13; August 10, plaintiff's Ex. 14; September 13, plaintiff's Ex. 15; [36] September 16, plaintiff's Ex. 16; [37] November 17, plaintiff's Ex. 17; [38] December 1, defendant's Ex. 5; March 5, 1949, defendant's Ex. 5; [39] May 4, 1949, defendant's Ex. 5; [40] and May 20, 1949, plaintiff's Ex. 10, defendant making no protest thereafter as to the correctness of plaintiff's statements of account until April 4, 1949, when defendant demanded payment of amounts withheld from the several invoices.

From the foregoing it appears plaintiff rejected items totalling 134,892 lbs. for which it had paid defendant $15,670.22 (N.T. 46, 47). After deductions for re-

placements $678.98, scrap $2,021.62, 10% deductions on invoices $1,178.10, payment withheld on invoices $1,682.90, there was a balance of $10,108.62 for which plaintiff brought this action.

Defendant's position at the trial was, granting that plaintiff should have a reasonable opportunity to inspect, machine, test, approve or reject and to notify defendant if there was a rejection, the failure to keep defendant advised as to replacements, rejections, and scrapped items between September 1947 and March 1948 prevented defendant from taking corrective measures in its casting procedure to avoid having rejections reach such proportions.

Defendant argued that it was denied the right to have notice of rejections and of an opportunity to examine the rejects to see if the casting was actually manufactured by defendant and if the rejections were warranted and made in good faith.

During the period in question the only source of supply for S401-2-3-5-6 was defendant's foundry. Some S80s were purchased from another foundry but they were readily distinguishable from defendant's product. Plaintiff's foreman testified that every effort was made to avoid rejections; that plaintiff was in need of the castings and that he personally made all of the rejections in good faith and only after every effort to make them usable had failed. The decision to stop returning rejects as of August 1947 and sell them as scrap was that of defendant. At no time was any request for inspection denied. On four oc-

34. Plaintiff's Ex. 12 —

| | | |
|---|---|---|
| Rejections | — | $7743.09 |
| Less Scrap, 65,398 lbs. @ $45 per gross ton | — | 1313.77 |
| | | $6429.32 |
| Less Replacements | — | 678.98 |
| | | $5750.34 |

35. February 14, 1947, defendant agreed that notice of rejections could not be given within 30 days. April 19, 1948, de-

fendant contended that its invoices required claims to be made within 10 days. At the trial defendant agreed that reasonable notice was sufficient.

36. Debit Memo, $594.

37. Debit Memo, $760.69.

38. Debit Memo, $1,496.10.

39. Debit Memo, $85.69.

40. Debit Memo, $21.22.

casions representatives of defendant were in the plaintiff's plant in Buffalo. Whether or not plaintiff acted reasonably in not notifying defendant promptly of all rejections without exception, and particularly between September 1947 and March 1948, was a question for the jury. It was submitted for their decision with appropriate instructions, the jury being advised that if they were to find for the plaintiff a deduction might be made if plaintiff's manner and delay in reporting rejections for the period in question was unreasonable.

Defendant, although failing to take several items into consideration, see supra, asserted that it did not have reasonable notification as to items amounting to $2,130.90 (see defendant's Ex. 5, memo with the March 10, 1948, statement).

After March 10, 1948, defendant concededly had reasonable notice of most of the rejected items and when defendant so desired they were promptly returned to defendant's plant.

After shipments terminated, defendant on April 14, 1949, wrote, "It is our feeling that amounts withheld from our invoice should now be released and paid to us * * *." Defendant's counterclaim sets up a claim for the withheld items, i. e., the unpaid invoices and the 10% deductions—$2,862.45.[41] Although as of March 10, 1948, defendant's file indicates proper notice as to items amounting to $2,130.68, in the counterclaim defendant allows credit for only $1,560.88,[42] less scrap value of $215.46 and a credit for replacements of $678.98, claiming a balance due of $2,196.01.

Defendant's position was that although it had had notices of rejections after March 10, 1948—in fact a great many items had been returned—because of the confusion created by the unreported items as of March 10, 1948, conditions

were so muddled that defendant was unable thereafter to determine on what items the plaintiff was entitled to credit and therefore gave none at all.

Confronted with the problem outlined, the jury returned a verdict for the plaintiff in the sum of $8,000, apparently allowing defendant credit for the value of the unreported items as of March 10, 1948.

■ There was an implied warranty of fitness for the purpose intended and that the castings would be the same as the sample. Pa.Uniform Sales Act of 1915, §§ 15, 16, 69 P.S. §§ 124, 125; Uniform Commercial Code, 12A P.S. §§ 2–313(1) (c), 2–315; Griffin v. Metal Product Co., 1919, 264 Pa. 254, 256, 107 A. 713; Kellogg Bridge Co. v. Hamilton, 1884, 110 U.S. 108, 112, 116, 3 S.Ct. 537, 28 L.Ed. 86; Samuel v. Delaware River Steel Co., 1919, 264 Pa. 190, 192, 107 A. 700; American Mfg. Co. v. Brady, 1912, 51 Pa.Super. 619, at page 622; Fogel v. Brubaker, 122 Pa. 7, at page 14, 15 A. 692.

■ Where recovery is allowed for breach of contract the damages awarded must fully compensate the injured party. Siegel v. Struble Bros., Inc., 1942, 150 Pa. Super. 343, at page 347, 28 A.2d 352. As to the distinction between cases where damages are liquidated and otherwise, see 174 A.L.R. 765, at page 769, and cf. 778. It is sufficient if a reasonable basis of computation is afforded although the result be only approximate. Eastman Kodak Co. of New York v. Southern Photo Materials Co., 1927, 273 U.S. 359, at page 379, 47 S.Ct. 400, 71 L.Ed. 684; Lieberthal v. Glen Falls Indemnity Co., 7 Cir., 1949, 174 F.2d 638, at page 640; Brunswick-Balke-Collender Co. v. Foster Boat Co., 6 Cir., 1944, 141 F.2d 882, at pages 883, 885. The jury may act upon probable and inferential, as well as direct and positive proof. Bigelow v. RKO Radio

41. Cf. supra, total $2,861.

42. The difference in amounts apparently arises from the use of different weights and price per lb. of the several items.

Pictures, Inc., 1946, 327 U.S. 251, at page 264, 66 S.Ct. 574, 90 L.Ed. 652. The general rule is that where a plaintiff gets less than he is entitled to he alone may complain. Postal Telegraph-Cable Co. v. Borough of New Hope, 1904, 192 U.S. 55, at page 62, 24 S.Ct. 204, 48 L.Ed. 338; Langroise v. Cummings, 9 Cir., 1941, 123 F.2d 969, at page 974; Weinstein v. Laughlin, 8 Cir., 1927, 21 F.2d 740; Ohio Boulevard Land Corp. v. Greggory, 6 Cir., 1931, 46 F.2d 263, at page 266.

■■■ The issues were submitted to the jury with appropriate instructions. We must therefore reject the claim that the verdict and the amount thereof were against the law and the evidence. As to the conduct of the trial and the ruling upon the evidence, a reading of the reports of the proceedings as the trial went on, placing each item in its proper context,[43] will abundantly demonstrate that the trial was conducted with proper decorum and dignity and that the defendant was afforded a fair and impartial trial.[44] Throughout the trial there were no motions for a mistrial or exceptions to the charge of the court. See 28 U.S.

C.A., Rule 51, F.R.C.P. There were times during the course of the trial when counsel for the defendant behaved in a manner reminiscent of a recent controversial figure on the Washington scene. The court had to discountenance such conduct and to admonish counsel fairly but firmly in such manner as not to prejudice the rights of his client. Cf. United States v. Johnson, 3 Cir., 1947, 165 F.2d 42, at page 50; United States v. Stoehr, D.C. M.D.Pa., 1951, 100 F.Supp. 143, at page 154; Fredrick v. United States, 9 Cir., 1947, 163 F.2d 536, at page 548. Ordinarily counsel cannot complain of a situation created by his own conduct. United States v. Stoehr, supra, 100 F.Supp. at page 161; Shields v. United States, 3 Cir., 1927, 17 F.2d 66, at page 69.

Absent any protest during the trial or exceptions after the charge, defense counsel, after reading the transcript of the testimony, in his additional reasons and in the argument criticizes the language used by the court in its rulings and in its charge. "A trial is not an exercise in semantics." Giffin v. Ensign, 3 Cir., 234 F.2d 307, 316. "We must guard against

---

43. Cf. United States v. Kafes, 3 Cir., 1954, 214 F.2d 887, at page 888; Johnson v. United States, 1943, 318 U.S. 189, at page 202, 63 S.Ct. 549, 87 L.Ed. 704; Glasser v. United States, 1942, 315 U.S. 60, at page 83, 62 S.Ct. 457, at page 471, 86 L.Ed. 680. The charge of the court must be read as a whole. United States v. Berg, 3 Cir., 1944, 144 F.2d 173, at page 177.

44. As to the additional reasons: (1) At side bar, N.T. 109, 110; in chambers, 187 at 190; developed at 110–111; see 180–182, 214–215, 244–245. (2) "Settlement". N.T. 30–33. Agreed to pay full amount. Rabinowitz v. Silverman, 1909, 223 Pa. 139, at page 144, 72 A. 378; Doylestown Aluminum Ware Co. v. Stern, 1927, 90 Pa.Super. 332, at page 335; Heyman v. Hanauer, 1930, 302 Pa. 56, at page 63, 152 A. 910; Henry on Pennsylvania Evidence, 1953 Ed., § 80, p. 112. (4) Cf. N.T. 92–93, later withdrawn; cf. 104, 207. (7) "Represented". N.T. 4. No objection or motion to strike. See Bascom v. Danville Stove & Mfg. Co., 1897, 182 Pa.

427, at page 441, 38 A. 510. Cf. N.T. 9–10, 178–180. Later fully developed. (8) As to offers on cross examination, Buck v. Com., 1885, 107 Pa. 486, at page 491; 58 Am.Jur. Witnesses, § 368, p. 366, Id. Trial, § 100, p. 90. See N.T. 108–111, later fully developed. See Rodgers v. Fleming, 1937, 325 Pa. 228, at page 233, 188 A. 161. Henry, op. cit. supra, § 727, p. 159. (3) See particularly N.T. 115–117, and see 63, 78–80, 112, 114 (cf. 103), 155, 204, 223, 264–272. (6) Defendant's suggestion. Examples of defense counsel's undue haste, see N.T. 93, 114, 161, 191, 192, 215, 217, 222, 254, 262, 263, 281. Reference at 281 to both counsel; cf. 161, 278–279, 281. (10) N.T. 100, 103, 114, 192. (5) Ex. 18d, e, supra, and cf. j. i. N.T. 93–99, 294. (9) N.T. 108–114. (11 a, b, c, d) See whole record. There were eight women on the jury. (11 e) Cf. N.T. 272, 100, 161, 254–255; cleared up at 275, 276. (12) and (13), see Giffin v. Ensign, infra.

the magnification \* \* \* of instances which were of little importance in their setting." Glasser v. United States, supra, 315 U.S. at page 83, 62 S.Ct. at page 471.

 "It is elementary that a federal judge has the right to comment on the evidence [United States v. Chiarella, 2 Cir., 1950, 184 F.2d 903, at page 908; United States v. Rutkin, 3 Cir., 1951, 189 F.2d 431, at page 440] and that it is not only his right but his duty to admonish counsel when necessary, provided he does so in temperate language. \* \* \*" Fredrick v. United States, 9 Cir.1947, 163 F.2d 536, at page 548. It is his responsibility to control the conduct of the trial to the end that the evidence shall be presented honestly, expeditiously and in such form as to be understood. United States v. Angelo, 3 Cir., 1946, 153 F.2d 247,[45] and see United States v. Goldstein, 2 Cir., 1941, 120 F.2d 485, at page 491; Quercia v. United States, 289 U.S. 466, at page 469, 53 S.Ct. 698, 699, 77 L.Ed. 1321.

Cross examination is a right but its proper bound is within the discretion of the trial judge. United States v. 3.554 Acres of Land, etc., 3 Cir., 1945, 147 F.2d 596, at page 601; Du Beau v. Smither & Mayton, Inc., 1953, 92 U.S.App.D.C. 213, 203 F.2d 395, at page 396, 37 A.L.R.2d 733, and see United States v. Stoehr, supra, 100 F.Supp. at page 155; Id., 3 Cir., 196 F.2d 276, at page 280, 33 A.L.R.2d 836; Farish Co. v. Madison Distributing Co., Inc., 2 Cir., 1930, 37 F.2d 455, at page 459. As to the propriety of indicating to counsel the basis for ruling, see United States v. Stoehr, supra, 100 F. Supp. at page 154, and at page 156, as to the duty to protect a witness.

45. As to the appropriate guide posts, cf. United States v. Warren, 2 Cir., 1941, 120 F.2d 211, at page 212, with United States v. Angelo, 3 Cir., 1946, 153 F.2d 247, at page 252; Goldstein v. United States, 8 Cir., 1933, 63 F.2d 609, at page 613, "\* \* \* the human element cannot be entirely eliminated from the trial of

In view of the foregoing, the court has no alternative but to grant plaintiff's motion to strike defendant's motion for a new trial.

law suits." Paschen v. United States, 7 Cir., 1934, 70 F.2d 491, at page 504, and cf. Robinson v. Pennsylvania R. Co., 3 Cir., 1954, 214 F.2d 798, at page 802. See the caveat in United States v. Neff, 3 Cir., 1954, 212 F.2d 297, at page 313, and see United States v. Ward, 3 Cir., 1948, 168 F.2d 226, at page 229.